## A11A2042. ROLLF v. THE STATE.

(724 SE2d 881)

MIKELL, Presiding Judge.

Convicted by a jury,[1] inter alia, of attempted murder of his wife, Tamara Thurman, three counts of felony cruelty to three children, and one count of misdemeanor cruelty to a fourth child, Russell Dean Rollf appeals from the trial court's denial of his motion for new trial, contending that he was denied due process and subjected to cruel and unusual punishment because the state did not charge him with aggravated assault with intent to murder and misdemeanor child cruelty, instead of attempted murder and felony cruelty to children.

1. Viewed in favor of the jury's verdict, the evidence was that, in June 2008, Thurman and Rollf were attempting to reconcile after a period of separation. Thurman and her four children, S. R., eight years old, B. T., six years old, D. R., three years old, and H. T., one year old,[2] were taken to the Savannah Motor Lodge by Thurman's mother, Linda Enfinger, on June 23, 2008, around 11:30 p.m., to be with Rollf.

Both Rollf and Thurman were drinking during the evening. Around 5:00 a.m., they began arguing and, because Rollf was making threats toward her, Thurman said she wanted to go back to her mother's house. After Thurman attempted to use the outside pay phone, which was not working, she returned to the room to try to use Rollf's cell phone, and he punched her in the nose. Thurman obtained Rollf's cell phone and called Enfinger at 5:40 a.m. to come get her and the children. Thurman then went into the bathroom to examine her nose. Rollf walked up behind her, grabbed her by her hair, and dragged her back into the motel room. According to S. R., Rollf grabbed a butcher knife and "[h]e put her [Thurman] on the floor and cut her." Thurman felt something "real sharp and hot" go across her neck and began bleeding profusely. As she struggled to get up, Rollf came at her again with the knife and sliced her left hand between her thumb and index finger so severely that her thumb was dangling from her hand. Thurman went to the bathroom and got a towel to wrap around her neck, got down on her knees, and begged Rollf to call 911. Because Rollf did not initially respond, Thurman told him she would take the blame if he would just get some help. According to S. R., all of the children were screaming and hollering. Rollf did call 911, and Corporal Darlene Jones of the Savannah-Chatham Metropolitan Police responded. She found Rollf and Thur-

---

[1] Rollf represented himself at the trial.

[2] While S. R. and D. R. are the biological children of Rollf, there was some uncertainty about the identity of the father of the other two children.

man sitting on the floor with a towel wrapped around Thurman's neck and blood everywhere. When she asked what had happened, Rollf responded that Thurman had cut herself, at which point Thurman said he did it to her. Jones also described all of the children as upset and crying. Jones could actually see Thurman's pulse through the large cut on her neck.

The tape of Rollf's 911 call was played at trial and, at several points, crying children were heard in the background. Asked about the children, Rollf responded "they're fine. They're not fine 'cause it's very traumatic." Rollf also reported that he had been cut when he tried to get the knife away from Thurman. The paramedic who treated Rollf at the scene observed that he had several shallow superficial cuts on his neck and torso that had already stopped bleeding on their own. There were no cuts on Rollf's hands. A medical expert opined that Rollf's injuries were consistent with self-infliction. The paramedic treating Thurman described her neck injury as life-threatening and noted that she was going into decompensated shock when he arrived. The bath towel which had been wrapped around her neck was completely saturated with blood.

Evidence was introduced of two similar incidents which occurred in Florida in 2005. On April 27, 2005, Thurman reported that Rollf had struck her, pulled her to the ground by her hair, and kicked her. Photos showing her injuries were introduced. Rollf told the officer that Thurman caused the injuries to herself. On August 11, 2005, officers again responded, finding Thurman hysterical and bleeding from her ear and nose. Rollf had also punched two holes in the bedroom wall.

The evidence of attempted murder and cruelty to children was legally sufficient.[3]

2. We consider Rollf's two enumerations, premised on the rule of lenity, together.

(a) Rollf was charged in count one of the indictment with criminal attempt to commit murder in that he "did knowingly and intentionally perform acts which constituted a substantial step toward the commission of said crime, to wit: did cut Tamara Thurman's neck with a knife . . . ."[4] Count two of the indictment charged aggravated assault in that he did "unlawfully assault Tamara Thurman with a knife, an object which when used offen-

---

[3] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[4] OCGA § 16-4-1 ("A person commits the offense of criminal attempt when, with intent to commit a specific crime, he performs any act which constitutes a substantial step toward the commission of that crime."); OCGA § 16-5-1 (a) ("A person commits the offense of murder when he unlawfully and with malice aforethought, either express or implied, causes the death of another human being.")

sively is likely to result in serious bodily injury, said person being the spouse of the accused . . . ."[5] Count two was merged into count one at sentencing.

> The Supreme Court of the United States has referred to the rule of lenity as a sort of junior version of the vagueness doctrine, which requires fair warning as to what conduct is proscribed. The rule of lenity applies when a statute, or statutes, establishes, or establish, different punishments for the same offense, and provides that the ambiguity is resolved in favor of the defendant, who will then receive the lesser punishment. However, the rule does not apply when the statutory provisions are unambiguous.[6]

Pretermitting the issue of whether there is any ambiguity in either the statutes defining attempted murder or aggravated assault, both criminal attempt to commit murder and aggravated assault are felonies.[7] "[T]he rule of lenity does not apply to convictions for two felony offenses."[8]

(b) Rollf was charged with three counts of felony cruelty to children for causing the emotional trauma of the three older children[9] and one count of misdemeanor cruelty to children for attacking Thurman in the presence of the youngest child.[10]

The rule of lenity applies where the same conduct would support either a misdemeanor or a felony conviction and requires that both crimes could be proved with the same evidence.[11] First degree cruelty to children requires proof that the perpetrator acted with malice and that the children suffered cruel or excessive physical or mental pain while third degree cruelty to children requires only that the perpe-

---

[5] OCGA § 16-5-21 (a) (2) ("A person commits the offense of aggravated assault when he or she assaults: . . . [w]ith a deadly weapon or with any object, device, or instrument which, when used offensively against a person, is likely to or actually does result in serious bodily injury[.]").

[6] (Citations and punctuation omitted.) *Banta v. State*, 281 Ga. 615, 617-618 (2) (642 SE2d 51) (2007).

[7] OCGA §§ 16-4-6 (a); 16-5-21 (j).

[8] (Footnote omitted.) *Rouen v. State*, 312 Ga. App. 8, 11 (3) (717 SE2d 519) (2011); *Poole v. State*, 302 Ga. App. 464, 467 (2) (691 SE2d 317) (2010).

[9] OCGA § 16-5-70 (b) ("Any person commits the offense of cruelty to children in the first degree when such person maliciously causes a child under the age of 18 cruel or excessive physical or mental pain.").

[10] OCGA § 16-5-70 (d) (2) ("Any person commits the offense of cruelty to children in the third degree when: . . . [s]uch person, who is the primary aggressor, having knowledge that a child under the age of 18 is present and sees or hears the act, commits a forcible felony, battery, or family violence battery.").

[11] *Falagian v. State*, 300 Ga. App. 187, 190-191 (2) (684 SE2d 340) (2009); *Selfe v. State*, 290 Ga. App. 857, 862 (3) (660 SE2d 727) (2008).

trator do an act with knowledge that a minor child is present and can see or hear the act.

Therefore, the two crimes cannot be proven by the same evidence, and the rule of lenity does not apply.[12]

*Judgment affirmed. Dillard and Boggs, JJ., concur.*

DECIDED MARCH 5, 2012 —

*Steven L. Sparger*, for appellant.

*Larry Chisolm, District Attorney, Frank M. Pennington II, Assistant District Attorney*, for appellee.

---

[12] Cf. *Staib v. State*, 309 Ga. App. 785, 793-794 (3) (711 SE2d 362) (2011) (holding rule of lenity not applicable to felony charges of cruelty to children and misdemeanor charge of contributing to the delinquency of a minor).