**FIRST DIVISION**
**PHIPPS, C. J.,**
**ELLINGTON, P. J., and DILLARD, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**March 25, 2014**

# In the Court of Appeals of Georgia

A12A0066. McNAIR v. THE STATE.

DILLARD, Judge.

This case returns to us from the Supreme Court of Georgia in order to determine whether, under the particular facts of the case *sub judice*, there exists ambiguity in the statutes defining the crimes of identity fraud[1] and financial-transaction-card theft[2] such that the trial court was required to apply the rule of lenity when sentencing appellant Todd Christopher McNair. Because we answer this question in the affirmative, we reverse the judgment and remand the case to the trial court for resentencing in accordance with this opinion.

---

[1] *See* OCGA § 16-9-121 (a).

[2] *See* OCGA § 16-9-31 (a).

The relevant facts and procedural history are as follows. The victim was lost and stopped her vehicle in order to ask McNair and his two companions, an adult female and a juvenile female, for directions. And after providing her with the requested information, McNair asked the victim if she was willing to drive him and his friends to the mall. The victim agreed to do so, and the adult female companion initially sat in the front-passenger seat, while McNair entered the back of the vehicle. But almost immediately, McNair asked to change seats and ended up in the front-passenger seat—where the victim's purse was sitting in the floorboard.

After they arrived at the mall and exited the victim's car, McNair announced to his companions that he "got me some money today," as he held the victim's wallet containing cash and credit cards. The trio then entered the mall, where they collectively selected items to purchase. The adult female companion testified that it was McNair who initially took the wallet out of the victim's purse, but the females who (alternatively) handed the victim's credit cards to the various cashiers to make their group purchases.

Thereafter, McNair was arrested and charged by accusation on one count of identity fraud for willfully possessing the victim's financial-transaction-card number

2

without her authorization and with the intent to fraudulently use that information in violation of OCGA § 16-9-121 (a) (1),[3] which provides that

> [a] person commits the offense of identity fraud when he or she willfully and fraudulently . . . [w]ithout authorization or consent, uses or possesses with intent to fraudulently use identifying information concerning a person . . . .[4]

Following his conviction by a jury, McNair argued during the sentencing hearing that the rule of lenity required that he be sentenced for committing a financial-transaction-card theft pursuant to OCGA § 16-9-31 (a) (1), the penalty for which is less severe than that for identity fraud.[5] OCGA § 16-9-31 (a) (1) provides that

---

[3] The accusation alleged that McNair "did willfully and fraudulently, without authorization, possess with intent to fraudulently use, identifying formation, to wit: a financial transaction card number, concerning an individual, [the victim], contrary to the laws of [the] State . . . ."

[4] OCGA § 16-9-121 (a) (1). OCGA § 16-9-120 (5) (F) expressly includes financial-transaction-card numbers within the definition of "identifying information" for the purposes of the crime of identity fraud.

[5] The penalty for identity fraud is up to ten years in prison and/or up to $100,000 in fines, whereas the penalty for financial-transaction-card theft is up to three years in prison and/or up to $5,000 in fines. *Compare* OCGA § 16-9-126 (a) *with* OCGA § 16-9-38 (b).

3

"[a] person commits the offense of financial transaction card theft when . . . [h]e takes, obtains, or withholds a financial transaction card from the person, possession, custody, or control of another without the cardholder's consent; *or who, with knowledge that it has been so taken, obtained, or withheld, receives the financial transaction card with intent to use it or to sell it or to transfer it to a person other than the issuer or the cardholder . . . .*[6]

The trial court rejected McNair's argument and sentenced him for identity fraud, after which he appealed to this Court. And in an unpublished opinion, we affirmed the trial court's ruling based upon a series of cases in which this Court previously held that the rule of lenity is confined to those situations when the statutory violations at issue involve a misdemeanor and a felony, but otherwise has no application when both crimes are classified as felonies.[7] The Supreme Court of Georgia granted *certiorari* in the case, disapproved of our prior precedents, and held

---

[6] OCGA § 16-9-31 (a) (1) (emphasis supplied).

[7] *See generally Rollf v. State*, 314 Ga. App. 596, 598 (2) (a) (724 SE2d 881) (2012) ("The rule of lenity does not apply to convictions of two felony offenses." (punctuation omitted)); *Rouen v. State*, 312 Ga. App. 8, 11 (3) (717 SE2d 519) (2011); *Fyfe v. State*, 305 Ga. App. 322, 328 (3) (699 SE2d 546) (2010); *Poole v. State*, 302 Ga. App. 464, 467 (2) (691 SE2d 317) (2010); *Falagian v. State*, 300 Ga. App. 187, 191 (2) (684 SE2d 340) (2009); *Shabazz v. State*, 273 Ga. App. 389, 391 (1) (615 SE2d 214) (2005).

4

that the rule of lenity is not so limited.[8] It thereafter remanded the case to this Court for us to determine whether McNair was, in fact, entitled to be sentenced under the lesser statute of financial-transaction-card theft. We now conclude that the rule of lenity applies in the case *sub judice*.

As our Supreme Court has explained, the rule of lenity finds its roots in the vagueness doctrine, "which requires fair warning as to what conduct is proscribed."[9] More specifically, the rule of lenity ensures that if and when an ambiguity exists in one or more statutes, such that the law exacts varying degrees of punishment for the same offense, "the ambiguity will be resolved in favor of a defendant, who will then receive the lesser punishment."[10] Of course, if it is determined after applying the

---

[8] *See generally McNair v. State*, 293 Ga. 282, 284-85 (745 SE2d 646) (2013); *id*. at 284 ("This Court has never held, however, that the rule of lenity only applies when the punishments are as between a misdemeanor and a felony.").

[9] *Id*. at 283; *see United States v. Lanier*, 520 U.S. 259, 266 (II) (117 SCt 1219, 137 LEd2d 432) (1997) ("[A]s a sort of 'junior version of the vagueness doctrine,' . . . the canon of strict construction of criminal statutes, or rule of lenity, ensures fair warning by so resolving ambiguity in a criminal statute as to apply it only to conduct clearly covered.") (citation omitted); ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 299 (1st ed. 2012) (noting that the rule of lenity canon is justified by the well-established precept that "when the government means to punish, its commands must be reasonably clear").

[10] *McNair,* 293 Ga. at 284 (punctuation omitted); *see Dixon v. State,* 278 Ga. 4, 7 (1) (d) (596 SE2d 147) (2004) ("The rule derives from the instinctive distaste

5

traditional canons of construction that the relevant statutory text is unambiguous, then the rule of lenity will not apply.[11] The fundamental inquiry when making that assessment is whether the identical conduct would support a conviction under either of two crimes with differing penalties.[12]

---

against men languishing in prison unless the lawmaker has clearly said that they should." (punctuation omitted)); *Brown v. State*, 276 Ga. 606, 608 (2) (581 SE2d 35) (2003) ("Where any uncertainty develops as to which penal clause is applicable, the accused is entitled to have the lesser of the two penalties administered." (punctuation omitted)).

[11] *See McNair,* 293 Ga. at 284; *Banta v. State*, 281 Ga. 615, 617 (2) (642 SE2d 51) (2007)*; see also United States v. Shabani*, 513 U.S. 10, 17 (II) (115 SCt 382) (1994) ("The rule of lenity, however, applies only when, after consulting traditional canons of statutory construction, we are left with an ambiguous statute." (citation and punctuation omitted)); *U.S. v. Johnson*, 655 F3d 594, 606 (7th Cir. 2011) (Manion, J.) (holding that the rule of lenity does not require a court to read a criminal statute "more narrowly than its plain terms suggest"). *But see* SCALIA & GARNER, *supra* at 298 ("The main difficulty with the rule of lenity is the uncertainty of its application. Its operation would be relatively clear if the rule were automatically applied at the outset of the textual inquiry, before any other rules of interpretation were invoked to resolve ambiguity. Treating it as a clear-statement rule would comport with the original basis for the canon and would provide considerable certainty. But that is not the approach the cases have taken.").

[12] *See Banta*, 281 Ga. at 618 (2) ("Simply put, the two statutes do not define the same offense[;] . . . [t]hus, the two defined crimes do not address the same criminal conduct, there is no ambiguity created by different punishments being set forth for the same crime, and the rule of lenity does not apply." (citations omitted)); *Dixon*, 278 Ga. at (6) (1) (a) (applying rule of lenity when "the State retained the discretion to prosecute the exact same conduct as either" a misdemeanor or a felony); *see Dawkins v. State*, 278 Ga. App. 343, 346 (629 SE2d 45) (2006) ("[T]he essential requirement

6

Here, we necessarily begin our analysis with "familiar and binding canons of construction."[13] Indeed, in considering the meaning of a statute, "our charge as an appellate court is to 'presume that the General Assembly meant what it said and said what it meant.'"[14] And toward that end, we must "afford the statutory text its plain and ordinary meaning, consider the text contextually, and read the text 'in its most natural and reasonable way, as an ordinary speaker of the English language would.'"[15] Put another way, where the language of a statute is plain and susceptible of only one natural and reasonable construction, "courts must construe the statute accordingly."[16] Finally, we are also mindful of our duty to "construe statutes to give sensible and

---

. . . is that both crimes could be proved with the same evidence." (punctuation omitted)).

[13] *Martinez v. State*, ___ Ga. App. ___ (2) (750 SE2d 504) (2013); *see* OCGA § 1-3-1.

[14] *Martinez,* ___ Ga. App. at ___(2) (citation omitted); *see* OCGA § 1-3-1 (b) ("In all interpretations of statutes, the ordinary signification shall be applied to all words . . . .").

[15] *Martinez,* ___ Ga. App. at ___ (2) (citation omitted).

[16] *Id.* (punctuation and citation omitted).

intelligent effect to all of their provisions and to refrain from any interpretation which renders any part of the statutes meaningless."[17]

The Georgia Public Defender Standards Council ("GPDSC") strenuously argues, in its role as *amicus curiae,* that when enacting the two statutes, the General Assembly intended for the financial-transaction-theft statute, and indeed the entirety of Title 16, Chapter 9, Article 3,[18] to govern only those crimes involving the actual physical possession or use of a financial-transaction card. On the other hand, GPDSC maintains that the identity-fraud statute, and the entirety of Title 16, Chapter 9, Article 8,[19] was designed to address those crimes that do not require an actual financial-transaction card, but rather involve the acquisition and possession of identifying information—*i.e.* the financial-transaction-card numbers—which can be used to fraudulently obtain access to, mostly electronically, another person's credit or assets. In GPDSC's view, the financial-transaction-card-theft statute addresses a narrower range of conduct, and "for purposes of statutory interpretation, a specific

---

[17] *R. D. Brown Contractors, Inc. v. Bd. of Educ. of Columbia Cnty.*, 280 Ga. 210, 212 (626 SE2d 471) (2006).

[18] *See* OCGA § 16-9-30 to 16-9-39 ("Illegal Use of Financial Transaction Cards").

[19] *See* OCGA § 16-9-120 to 16-9-132 ("Identity Fraud").

8

statute will prevail over a general statute, absent any indication of a contrary legislative intent [as reflected by the plain meaning of the relevant text]."[20] Thus, according to GPDSC, the critical distinction between the two crimes at issue is the fraudulent possession and/or use of the *tangible* financial-transaction card itself (financial-transaction-card theft), as opposed to the numbers on the card independently of the card (identity fraud), and it claims McNair committed only the former. And while we find GPDSC's argument persuasive in some respects, we disagree that the demarcation line between these two offenses is as clear as it posits.

Both the financial-transaction-card-theft statute and the identity-fraud statute criminalize not only the unauthorized use of a financial-transaction card and/or its numbers, but also the fraudulent possession with intent to use same.[21] Thus, while the distinction made by GPDSC may be easily drawn after a suspect has unlawfully obtained and physically presented a financial-transaction card to a merchant in order to effectuate a fraudulent purchase, that distinction is less obvious when a suspect is found to be in the unlawful possession of numerous financial-transaction cards from

---

[20] *Dixon*, 278 Ga. at 6 (1) (b) (punctuation omitted); *see also Hammond v. State*, 10 Ga. App. 143 (72 SE 937) (1911) (noting that "in the construction of general and special acts," the maxim *generalia specialibus non derogant* applies).

[21] *See* OCGA § 16-9-31 (a) (1); OCGA § 16-9-121 (a) (1).

one or more victims with the fraudulent intent to use, but prior to the actual use, of those cards. In such a situation, we are not prepared to categorically say that the General Assembly intended to eliminate all prosecutorial discretion and mandate that the suspect be charged exclusively with financial-transaction-card theft, as opposed to identity fraud.[22] Consequently, our inquiry is not at an end.

The question remains whether, under the particular facts of this case, an ambiguity exists between the financial-transaction-theft statute and the identity-theft statute such that the rule of lenity applies. Significantly, McNair was not accused of taking or using the victim's credit card, but of willfully and fraudulently possessing the credit-card number without the victim's authorization and with the fraudulent

---

[22] As acknowledged by GPDSC, our conclusion is buttressed by the fact that OCGA § 16-9-33, entitled "financial transaction card fraud" and contained within Article 3, criminalizes certain uses of financial-transaction-card numbers separately from the card itself. *See* OCGA § 16-9-33 (a) (2) (C) (criminalizing the knowing use of a financial-transaction-card number that was not issued or was forged, altered, expired, revoked, or obtained by fraudulent application in order to obtain money, goods, services or anything else of value); OCGA § 16-3-33 (a) (2) (D) (criminalizing the giving (orally or in writing) of a financial-transaction-card number without the cardholder's authorization to the provider of and for the purpose of obtaining money, goods, services, or anything else of value); *see also* OCGA § 16-9-33 (f) (criminalizing certain conduct involving a financial-transaction-card number).

intent to use that information.[23] These same operative facts satisfy the essential elements of both OCGA § 16-9-31 (a) (1) and OCGA § 16-9-121 (a) (1), neither of which requires proof of any fact that the other does not.[24] Thus, although there are other ways in which either crime could have been committed, McNair's conduct, as charged, subjected him to prosecution and sentencing under both OCGA § 16-9-31 (a) (1) and OCGA § 16-9-121 (a) (1). And because these statutes provide different grades of punishment for the same criminal acts, McNair is entitled to the rule of

---

[23] On appeal, the State argues that there was evidence presented at trial supporting a finding that McNair actually took the victim's credit card, and that this fact ends any further inquiry because it satisfies the "taking" element of the financial-transaction-card-theft statute that is not required by the identity-fraud statute. But although that is certainly one manner in which the former crime can be committed, a violation of that statute can also be established with evidence that one receives a financial-transaction card with the knowledge it has been stolen and with the intent to use it. *See* OCGA § 16-9-31 (a) (1). And because McNair was not charged with taking the victim's credit card, the jury made no such finding.

[24] We recognize that the crime of identity fraud requires proof that a suspect unlawfully "possesses" identifying information, *i.e.*, financial-transaction-card numbers, whereas the crime of financial-transaction-card theft requires proof that a suspect unlawfully "receives" a financial-transaction card, but under the specific facts of this case as charged, we conclude that these distinctions are of no meaningful textual significance. *Compare* The Compact Oxford English Dictionary 1395 (2d ed. 1991) (defining "possess" as, *inter alia*, "[to] have possession of, as distinct from ownership") with *id.* at 1524 (defining "receive" as, *inter alia*, "[t]o take into one's hands, or into one's possession . . .").

11

lenity.[25] We therefore reverse McNair's identity-fraud conviction and remand this case for resentencing under the financial-transaction-card-theft statute, which mandates a lesser punishment.[26]

*Judgment reversed and case remanded for resentencing. Phipps, C. J., and Ellington, P. J., concur.*

---

[25] *See Dixon*, 278 Ga. at 7 (1) (d) (applying the rule of lenity because "the same conduct would result in the imposition of dramatically different penalties under the two statutes"); *Washington v. State*, 283 Ga. App. 570, 573 (4) (642 SE2d 199) (2007) (applying the rule of lenity because "[v]iewing the record as a whole, it is apparent that the same evidence could be used to prove" two separate offenses with different grades of punishment); *Dawkins*, 278 Ga. App. at 345-46 (applying the rule of lenity because the same evidence supported a conviction under two statutes, one a felony and one a misdemeanor). *Compare Banta*, 281 Ga. at 618 (2) (concluding that the rule of lenity did not apply because "the two statutes do not define the same offense"); *White v. State*, 319 Ga. App. 530, 532 (2) (737 SE2d 324) (2013) (rejecting rule of lenity argument because essential elements of two offenses differed); *Metts v. State*, 297 Ga. App. 330, 337 (6) (677 SE2d 377) (2009) (refusing to apply rule of lenity when "the two offenses at issue require different conduct"); *Selfe v. State*, 290 Ga. App. 857, 862 (3) (660 SE2d 727) (2008) (holding no rule of lenity because the felony offense required proof of an element that the misdemeanor offense did not).

[26] *See Dixon*, 278 Ga. at 7 (1) (d); *Washington*, 283 Ga. App. at 573 (4); *Dawkins*, 278 Ga. App. at 345-46.