**FOURTH DIVISION**
**DOYLE, P. J.,**
**COOMER and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**September 25, 2019**

# In the Court of Appeals of Georgia

A19A1452. GONZALEZ v. THE STATE.

COOMER, Judge.

After a jury trial, Ruben Gonzalez was convicted of criminal attempt to commit a felony (murder), two counts of aggravated assault (family violence), possession of a firearm during the commission of a felony, cruelty to children in the first degree, and cruelty to children in the third degree. Gonzalez appeals from his convictions and the denial of his motion for new trial, contending that (1) the trial court erred by failing to apply the rule of lenity in sentencing him on Count 1, criminal attempt to commit a felony (murder), rather than on Count 2, aggravated assault; (2) the trial court erred by failing to apply the rule of lenity in sentencing him on Count 5, cruelty to children in the first degree, rather than on Count 6, cruelty to children in the third degree; (3) the trial court erred by failing to merge sentencing for Count 3, aggravated

assault, into Count 1, criminal attempt to commit a felony (murder), or Count 2, aggravated assault; and (4) he was denied effective assistance of counsel. For the reasons that follow, we affirm.

On appeal from a criminal conviction, we construe the evidence in the light most favorable to the verdict, and the defendant no longer enjoys a presumption of innocence. See *Williams v. State*, 298 Ga. 208, 213 (2) (a) (779 SE2d 304) (2015). Viewed in this light, the evidence shows that on the morning of April 24, 2014, the victim was preparing for work in the master bathroom of the home she shared with Gonzalez, who was her estranged husband. The victim had served Gonzalez with divorce papers earlier that month, but they both still resided in the marital home, although they slept in separate bedrooms.

Gonzalez entered the bathroom, and he and the victim exchanged notes regarding the terms of the pending divorce. The victim refused to discuss the issue at that time, and Gonzalez left the bathroom. Shortly thereafter, Gonzalez returned, pushed the victim, and then put a gun to her head and pulled the trigger. When the

gun did not fire,[1] Gonzalez threw the victim to the floor and began slamming her head against the tile floor.

The victim's screams woke their two sons, who were then 15 and 18 years old. The 15-year-old entered the bathroom first, and upon seeing Gonzalez on top of the victim, intervened by pulling Gonzalez off of the victim. The 18-year-old picked up the gun, and the victim left the room to call 911. The victim saw a knife on the floor of the bedroom near the bathroom and instructed her sons to remove it from the room. The police arrived within a few minutes and secured the scene.

Gonzalez was indicted on one count of criminal attempt to commit a felony (murder) (Count 1); two counts of aggravated assault (family violence) (Counts 2 and 3); one count of possession of a firearm during the commission of a felony (Count 4); one count of cruelty to children in the first degree (Count 5); and one count of cruelty to children in the second degree (Count 6). After a jury trial, Gonzalez was convicted of all counts. The trial court sentenced Gonzalez to 30 years with 20 to serve and the balance probated on Count 1; 20 years to serve on Count 3, to run concurrent to

---

[1] The suspected cause of the gun's failure to fire was a double feed, where one cartridge failed to eject before the second cartridge was stripped from the magazine to be placed in the barrel. It was unclear whether the double feed was caused by a malfunction of the pistol or operator error.

Count 1; 5 years to serve on Count 4, to run consecutive to Count 1; and 20 years to serve on Count 5, to run concurrent to Count 1. Count 2 merged into Count 1, and Count 6 merged into Count 5.

Gonzalez filed a motion for new trial, which the trial court denied after a hearing. This appeal followed.

1. Gonzalez contends that the trial court erred by failing to apply the rule of lenity in sentencing him on Count 1, criminal attempt to commit a felony, rather than on Count 2, aggravated assault, denying his rights to due process and not to be subjected to cruel and unusual punishment as guaranteed by the Eighth and Fourteenth Amendments to the United States Constitution and Article I, Section I, Paragraphs I and XVII of the 1983 Georgia Constitution. We disagree.

"As in all appeals involving the construction of statutes, our review is conducted under a de novo standard." *Mitchell v. State*, 343 Ga. App. 116, 117 (806 SE2d 226) (2017) (citation and punctuation omitted).

> The rule of lenity . . . ensures that if and when an ambiguity exists in one or more statutes, such that the law exacts varying degrees of punishment for the same offense, the ambiguity will be resolved in favor of a defendant, who will then receive the lesser punishment. But if after applying the traditional canons of statutory construction the relevant text remains unambiguous, the rule of lenity will not apply. The fundamental

4

inquiry when making this assessment, then, is whether the identical conduct would support a conviction under either of two crimes with differing penalties, i.e., whether the statutes define the same offense such that an ambiguity is created by different punishments being set forth for the same crime.

*Gordon v. State*, 334 Ga. App. 633, 634-645 (780 SE2d 376) (2015) (footnotes and punctuation omitted). "Therefore, to decide whether the rule of lenity applies, we look to whether there is any ambiguity in the two statutes such that both crimes could be proved with the same evidence." *Gordon v. State*, 337 Ga. App. 64, 66 (1) (785 SE2d 900) (2016) (footnote and punctuation omitted).

However,

that a single act may, as a factual matter, violate more than one penal statute does not implicate the rule of lenity. . . . In such a circumstance, a defendant may be prosecuted for more than one crime. However, the injustice that must be avoided is *sentencing* the defendant for more than one crime following his conviction of multiple crimes based upon the same act. When a defendant is so prosecuted, the principle of factual merger operates to avoid the injustice.

*Banta v. State*, 281 Ga. 615, 618 (2) (642 SE2d 51) (2007) (citations and punctuation omitted, emphasis in original).

5

Here, Gonzalez was charged with criminal attempt to commit a felony in Count 1 and aggravated assault in Count 2. The criminal attempt statute provides: "A person commits the offense of criminal attempt when, with intent to commit a specific crime, he performs any act which constitutes a substantial step toward the commission of that crime." OCGA § 16-4-1. The attempted crime in this case was murder, and the statute for murder provides: "A person commits the offense of murder when he unlawfully and with malice aforethought, either express or implied, causes the death of another human being." OCGA § 16-5-1 (a). The aggravated assault statute provides, in relevant part: "A person commits the offense of aggravated assault when he or she assaults . . . with a deadly weapon[.]" OCGA § 16-5-21 (a). "A person commits the offense of simple assault when he or she . . . [c]ommits an act which places another in reasonable apprehension of immediately receiving a violent injury." OCGA § 16-5-20 (a).

The indictment accused Gonzalez of committing criminal attempt to commit a felony by "perform[ing] acts which constitute a substantial step toward the commission of [murder], to wit: accused pointed a handgun at the head of victim . . . and did pull the trigger[.]" The indictment accused Gonzalez of committing aggravated assault by "knowingly mak[ing] an assault upon the person of [the victim]

6

with a deadly weapon, to wit: a handgun by pointing said handgun at said victim's head, placing her in reasonable apprehension of receiving a violent injury[.]"

A review of these statutes and the language in the indictment shows that the two counts do not address the same criminal conduct. Under the indictment and the statutory definitions, Gonzalez could commit attempted murder only if he performed an act which constituted a substantial step toward the commission of murder; that substantial step was pulling the trigger of the handgun aimed at the victim's head. Such an additional step is not required for the commission of aggravated assault. Thus, Counts 1 and 2 are not proved by the same evidence, and the rule of lenity does not apply.

2. Gonzalez also contends that the trial court erred by failing to apply the rule of lenity in sentencing him on Count 5, cruelty to children in the first degree, rather than on Count 6, cruelty to children in the third degree, denying his rights to due process and not to be subjected to cruel and unusual punishment as guaranteed by the Eighth and Fourteenth Amendments to the United States Constitution and Article I, Section I, Paragraphs I and XVII of the 1983 Georgia Constitution. We disagree.

OCGA § 16-5-70 (b) provides as follows: "Any person commits the offense of cruelty to children in the first degree when such person maliciously causes a child

7

under the age of 18 cruel or excessive physical or mental pain." OCGA § 16-5-70 (d) provides, in relevant part: "Any person commits the offense of cruelty to children in the third degree when . . . [s]uch person, who is the primary aggressor, having knowledge that a child under the age of 18 is present and sees or hears the act, commits a forcible felony, battery, or family violence battery."

The indictment accused Gonzalez of committing cruelty to children in the first degree by "maliciously caus[ing] [his 15-year-old son], a child under the age of eighteen (18) years, excessive mental pain by forcing said child to intervene and prevent the accused from beating said child's mother[.]" Gonzalez was accused of committing cruelty to children in the third degree by "being the primary aggressor [and] unlawfully commit[ting] the offense of attempted murder, a felony, upon [the victim], while having the knowledge that [his 15-year-old son], a child under the age of eighteen (18) years, was present to see or hear the act[.]"

Again, a review of the statute and the indictment reveals that Counts 5 and 6 do not address the same criminal conduct. As alleged here, cruelty to children in the first degree requires proof of malice and that the child suffered excessive mental pain, "while third degree cruelty to children requires only that the perpetrator do an act with knowledge that a minor child is present and can see or hear the act. Therefore,

8

the two crimes cannot be proven by the same evidence, and the rule of lenity does not apply." *Rollf v. State*, 314 Ga. App. 596, 598-599 (2) (b) (724 SE2d 881) (2012) (footnote omitted), disapproved of on other grounds by *McNair v. State*, 293 Ga. 282 (745 SE2d 646) (2013).

3. Gonzalez next contends that the trial court erred by failing to merge sentencing for Count 3, aggravated assault, into Count 1, criminal attempt to commit a felony (murder), or Count 2, aggravated assault, thereby denying his rights to due process and a fair trial as guaranteed by the Fourteenth Amendment to the United States Constitution and Article I, Section I, Paragraph I of the 1983 Georgia Constitution. We disagree.

"Under the doctrine of merger, a criminal defendant cannot be subject to the imposition of multiple punishment when the same conduct establishes the commission of more than one crime. The doctrine of merger does not apply, however, if the multiple convictions are not premised upon the same conduct." *Johnson v. State*, 305 Ga. App. 838, 840 (2) (700 SE2d 726) (2010) (citations omitted). "In determining whether merger has occurred, the key question is whether the different offenses are proven with the same facts. If one crime is complete before the other takes place, the two crimes do not merge." *Lord v. State*, 297 Ga. App. 88, 94 (2) (676

9

SE2d 404) (2009) (citation and punctuation omitted). "We review this legal issue de novo." *Jones v. State*, 285 Ga. App. 114, 115 (645 SE2d 602) (2007) (footnote and punctuation omitted).

Here, Gonzalez was charged in Count 3 with "mak[ing] an assault upon the person of [the victim] with accused's hands, objects when used offensively against a person are likely to result in serious bodily injury by placing accused's hands around said victim's neck and slamming said victim's head against the floor[.]" In contrast, both the attempted murder alleged in Count 1 and the aggravated assault alleged in Count 2 involved the use of a handgun. Therefore, the conviction on Count 3 was not based on the same conduct as that in Counts 1 and 2.

In addition, the victim testified at trial that Gonzalez came into the bathroom, pointed the gun at her head, and pulled the trigger. After the gun failed to fire, he then knocked her to the floor and put his hands around her neck, slamming her head into the tile floor. "Accordingly, the underlying facts used to prove each offense are different and the evidence showed that one crime was complete before the other occurred." *Jones*, 285 Ga. App. at 116 (1) (citation and punctuation omitted). Consequently, the trial court did not err by finding that Count 3 did not merge into either Count 1 or Count 2.

4. Gonzalez next contends that he was denied effective assistance of counsel as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section I, Paragraph XIV of the 1983 Georgia Constitution. We disagree.

To prevail on an ineffective assistance of counsel claim, a criminal defendant must show that (1) his counsel's performance was deficient and (2) the deficient performance so prejudiced him that there is a reasonable probability that, but for the counsel's errors, the outcome of the trial would have been different. *Strickland v. Washington*, 466 U. S. 668, 687 (III), 694 (III) (B) (104 SCt 2052, 80 LE2d 674) (1984). "The likelihood of a different result must be substantial, not just conceivable." *Hill v. State*, 291 Ga. 160, 164 (4) (728 SE2d 225) (2012) (citation omitted).

> To show that his lawyer's performance was deficient, [Gonzalez] must demonstrate that the lawyer performed his duties in an objectively unreasonable way, considering all the circumstances and in the light of prevailing professional norms. This is no easy showing, as the law recognizes a strong presumption that counsel performed reasonably, and [Gonzalez] bears the burden of overcoming this presumption. To carry this burden, he must show that no reasonable lawyer would have done what his lawyer did, or would have failed to do what his lawyer did not. In particular, decisions regarding trial tactics and strategy may form the

11

basis for an ineffectiveness claim only if they were so patently unreasonable that no competent attorney would have followed such a course.

Even when a defendant has proved that his counsel's performance was deficient in this constitutional sense, he also must prove prejudice by showing a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. It is not enough to show that the errors had some conceivable effect on the outcome of the proceeding. Rather, [Gonzalez] must demonstrate a reasonable probability of a different result, which, the United States Supreme Court has explained, is a probability sufficient to undermine confidence in the outcome.

The reviewing court need not address both components of the inquiry if the defendant makes an insufficient showing on one. In all, the burden of proving a denial of effective assistance of counsel is a heavy one, and [Gonzalez] has failed to carry that burden.

*Brown v. State*, 302 Ga. 454, 457-458 (2) (807 SE2d 369) (2017) (citations and punctuation omitted).

"A claim of ineffective assistance of counsel is a mixed question of law and fact. The proper standard of review requires that we accept the [trial] court's factual findings unless clearly erroneous, but we independently apply the legal principles to the facts." *Head v. Carr*, 273 Ga. 613, 616 (4) (544 SE2d 409) (2001) (citations omitted).

12

(a) Gonzalez argues that his trial counsel was ineffective in failing to object to a police officer testifying to out-of-court statements made to him by the victim and her sons because the out-of-court statements were not admissible as prior consistent statements.[2] We disagree.

Pretermitting whether the out-of-court statements to the police officer were admissible as prior consistent statements, they were nevertheless admissible as excited utterances. OCGA § 24-8-803 (2) provides that "statement[s] relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition" are not excluded by the hearsay rule. In its order denying Gonzalez's motion for new trial, the trial court found that "all of the statements related to [Gonzalez's] assault on [the victim] and its immediate aftermath, which was clearly a startling event for the victim and her sons. Further, the statements were made close in time after the attack, while the declarants were still very much under the stress of the event." The record supports the trial court's finding. See *Robbins v. State*, 300 Ga. 387, 390-391 (2) (793 SE2d 62) (2016) ("While the declarant must still be under the stress or excitement that the startling event caused,

_____

[2] Pursuant to OCGA § 24-6-613 (c), "[a] prior consistent statement shall be admissible to rehabilitate a witness if the prior consistent statement logically rebuts an attack made on the witness's credibility[.]"

13

the excited utterance need not be made contemporaneously to the startling event. It is the totality of the circumstances, not simply the length of time that has passed between the event and the statement, that determines whether a hearsay statement was an excited utterance." (citations omitted)). Given that the statements were admissible as excited utterances, trial counsel's failure to object on hearsay grounds does not constitute ineffective assistance, as failure to make a meritless objection cannot support a claim of ineffective assistance. See *Watson v. State*, 303 Ga. 758, 762 (3) (814 SE2d 396) (2018) ("Trial counsel's decision not to object was not deficient performance, because an objection would have been meritless.")

(b) Next, Gonzalez argues that his trial counsel provided ineffective assistance of counsel by failing to move for a mistrial or object when the police officer stated that Gonzalez invoked his right to counsel. Again, we disagree.

At trial, the State asked the police officer, "Now, when you first detained Mr. Gonzalez, did he want to speak to you? Or did he say anything to you when you first detained him?" The police officer responded, "No, immediately he stated I would not be speaking about this. You know, something similar to that. He said he would not be speaking without an attorney."

14

In *Mallory v. State*, 261 Ga. 625, 630 (5) (409 SE2d 839) (1991), the Supreme Court announced as a categorical rule that "a comment upon a defendant's silence or failure to come forward is far more prejudicial than probative" and is, therefore, inadmissible. Gonzalez contends that the police officer's testimony was improper based on *Mallory*, and that his trial counsel was ineffective for failing to object to it.

When Gonzalez was tried in 2017, the new Evidence Code was in effect. At that time, whether the *Mallory* rule had been abrogated by the new Evidence Code was unsettled and subject to dispute. See *Eller v. State*, 303 Ga. 373, 384 (IV) (E) (811 SE2d 299) (2018) ("We have specifically declined thus far to decide whether *Mallory* applies in trials after January 2013." (citations omitted)). After Gonzalez's appeal was docketed and briefed, however, the Supreme Court expressly held that "*Mallory*'s categorical, bright-line rule excluding all comment upon a defendant's silence or failure to come forward as far more prejudicial than probative . . . was abrogated by the new Evidence Code." *State v. Orr*, 305 Ga. 729, 739 (3) (827 SE2d 892) (2019) (citation, footnote, and punctuation omitted). "Now that [the Supreme Court has] squarely held that *Mallory* was abrogated by Georgia's new Evidence Code, it is clear that a defendant cannot prevail on a claim of ineffectiveness on the

15

basis that his trial counsel failed to rely on a case that was not applicable to his trial."

*Jackson v. State*, ___ Ga. ___ (5) (a) (830 SE2d 99) (2019).

(c) Gonzalez next contends that trial counsel was ineffective in calling his neighbor as a defense witness because the neighbor's testimony on cross-examination was harmful to the defense. We disagree.

"The decision to call a defense witness is a matter of trial strategy and tactics within the province of the lawyer after consultation with the client." *Williams v. State*, 292 Ga. 844, 854 (3) (h) (742 SE2d 445) (2013) (citation omitted). Here, trial counsel testified at the motion for new trial hearing that Gonzalez had suggested calling the neighbor as a witness. Trial counsel further testified that he did not expect the neighbor to testify as he did on cross-examination because the neighbor had been very supportive of the defense's theory of the case during his pre-trial interview. Trial counsel also noted at the hearing that the neighbor had given favorable character testimony on direct examination and had testified that Gonzalez had sold him an AR-15, which supported the defense theory that Gonzalez purchased the pistol used in the assault for the purpose of reselling it, not to use it to try to kill his wife. Under these circumstances, "the fact that [Gonzalez], in hindsight, now questions the efficacy of

16

the chosen defense strategy cannot establish ineffective assistance." *Id.* (citation omitted).

(d) Finally, Gonzalez argues that his trial counsel was ineffective in calling the lead detective on the case as a defense witness, which resulted in a number of matters that were harmful to the defense being presented to the jury. Again, we disagree.

Trial counsel testified at the motion for new trial hearing that, as with the neighbor, Gonzalez had suggested calling the lead detective as a witness. Trial counsel further testified that the lead detective was sympathetic to the defense in his pre-trial interview, and that he called the lead detective as a witness to establish the narrow fact that the victim brought a knife to the altercation with Gonzalez. Trial counsel testified that once the lead detective got on the witness stand, however, his testimony differed significantly from what had previously been discussed. Trial counsel stated that in hindsight, he should have stopped questioning the lead detective once it was clear that his testimony was not going to be favorable, but that he was still trying to get him to testify to the point about the knife.

Again, "[t]he decision to call a defense witness is a matter of trial strategy and tactics within the province of the lawyer after consultation with the client." *Williams*, 292 Ga. at 854 (3) (h) (citation omitted). While Gonzalez may now regret suggesting

17

the lead detective as a witness, "the fact that [Gonzalez], in hindsight, now questions the efficacy of the chosen defense strategy cannot establish ineffective assistance." *Id.* (citation omitted).

Gonzalez also argues that his trial counsel provided ineffective assistance of counsel by questioning the lead detective in a way that allowed him to repeat part of what the victim told him. Gonzalez contends that this testimony was not admissible as a prior consistent statement and bolstered the victim's testimony by repeating parts of that testimony. However, as discussed above, his trial counsel had a tactical reason for calling the lead detective as a witness. Based on his pre-trial interview with the lead detective, his trial counsel did not expect that the lead detective would testify as he did. Given the strong presumption that his trial counsel performed reasonably, Gonzalez has not met his burden of proving that his trial counsel provided ineffective assistance by questioning the lead detective as he did. See *Brown*, 302 Ga. at 457 (2). Furthermore, Gonzalez has not shown a reasonable probability that, if his trial counsel had not asked the lead detective these questions, the result of the proceeding would have been different. See *id.*

Next, Gonzalez argues that his trial counsel provided ineffective assistance of counsel when he questioned the lead detective in a way that allowed him to testify

that Gonzalez invoked his right to counsel. During trial, Gonzalez's trial counsel asked the lead detective, "What did Mr. Gonzalez say to you?" The lead detective answered, "To answer your question, sir, what I remember him telling me was that he wanted to speak to his lawyer." His trial counsel then asked, "I'm sorry?" The lead detective replied, "He wanted a lawyer." Again, Gonzalez's argument that this testimony was improper is based on the Supreme Court's holding in *Mallory*, 261 Ga. 625. As discussed in Division 4 (b), "[n]ow that [the Supreme Court has] squarely held that *Mallory* was abrogated by Georgia's new Evidence Code, it is clear that a defendant cannot prevail on a claim of ineffectiveness on the basis that his trial counsel failed to rely on a case that was not applicable to his trial." *Jackson*, ___ Ga. at ___ (5) (a) (830 SE2d 99) (2019).

*Judgment affirmed. Doyle, P. J., and Markle, J., concur.*