**FIFTH DIVISION**
**REESE, P. J.,**
**MARKLE and COLVIN, JJ.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS
COURT. ALL FILINGS MUST BE SUBMITTED WITHIN
THE TIMES SET BY OUR COURT RULES.*

**October 1, 2020**

# In the Court of Appeals of Georgia

A20A0914. AUSTIN v. THE STATE.

REESE, Presiding Judge.

A jury found Emmitt Austin guilty of four counts of exploitation of an elder person.[1] On appeal, Austin argues that the evidence was insufficient to support his convictions, the trial court erred in admitting other acts evidence, and the trial court erred in declining to apply the rule of lenity and sentence him under the theft by deception statute. For the reasons set forth infra, we affirm the trial court's ruling regarding the sufficiency of the evidence and the admission of the other acts evidence, but reverse the trial court's decision regarding the rule of lenity, and remand for resentencing.

---

[1] See OCGA § 16-5-102 (a).

Viewed in the light most favorable to the jury's verdict,[2] the evidence shows the following. The victim, Keylon Thompson, was in the home rental business and was over 65 at the time of the offenses. Thompson met Austin because Austin's mother rented a house from Thompson. Thompson agreed to let Austin take over the rental after Austin's mother moved out of the residence. The rent for the house was $500 per month. Austin paid the rent with $800 checks that were supposedly from his employer. He asked Thompson to refund the difference, and Thompson did so. When Thompson went to deposit the checks, however, he discovered that they were bad checks. Thompson confronted Austin about the checks, and Austin said he was afraid to go back to his employer because he thought his employer would kill him.

Thompson told Austin that he needed to find another job. Austin told Thompson that he had applied through the Georgia Department of Labor. Thompson received a call from a person claiming to be with the Department of Labor. That person informed Thompson that Austin had scored very well on a test, but needed more money to take tests and buy a computer. Thompson loaned Austin thousands of dollars for the tests and a computer.

---

[2] See *Martin v. State*, 349 Ga. App. 656, 656-657 (1) (825 SE2d 227) (2019).

2

Thompson also believed that he was helping the Federal Bureau of Investigation ("FBI") investigate Austin's employer. A person called Thompson and claimed to be a "top man" from the FBI. That person informed Thompson that he would be reimbursed for all the bad checks and for all the money he had loaned Austin. A branch manager at Thompson's bank testified that Thompson contacted him about a loan for $10,000. Thompson told the branch manager that he needed the loan for Austin because Austin was working for the FBI and needed the money to make payments to a "mob or drug cartel[.]" Thompson said that once he made this last payment, then he would get all of his money back from the government. Thompson told the branch manager that he had already given Austin thousands of dollars.

Two bank tellers at Thompson's bank testified that Austin periodically came into the bank to cash checks from Thompson's account. Austin told the tellers that he had obtained a job working for the government and would be making trips to Washington and Atlanta from Dougherty county. Thompson told one of the tellers that he was funding Austin for his government work.

Thompson also gave checks to Austin for various other purposes, including doctor's bills, taxes, utilities, travel, child support, and witness protection. The State

introduced approximately 75 checks written by Thompson. All told, Thompson gave approximately $112,000 to Austin. During a police interview, Austin admitted that the people he told Thompson about were fictitious, and that the rental checks he wrote Thompson were of no value.

The jury found Austin guilty on all counts. The trial court sentenced him to 60 years, with the first 30 years to be served in confinement. Austin filed a motion for new trial, which the trial court denied after a hearing. This appeal followed.

In reviewing a challenge to the sufficiency of the evidence, we construe the evidence in the light most favorable to the verdict, and the defendant no longer enjoys a presumption of innocence.[3] We do not weigh the evidence or resolve issues of witness credibility, but merely determine whether the jury was authorized to find the defendant guilty of the charged offenses beyond a reasonable doubt.[4] We review the trial court's admission of other acts evidence for an abuse of discretion.[5] With these guiding principles in mind, we now turn to Austin's claims of error.

---

[3] *Bryson v. State*, 316 Ga. App. 512 (729 SE2d 631) (2012).

[4] Id.

[5] See *State v. Parks*, 350 Ga. App. 799, 813 (4) (830 SE2d 284) (2019).

1. (a) Austin argues that there was insufficient evidence to support his convictions. He contends that Thompson gave money to Austin "freely and willingly." He also argues that Thompson was not a credible witness, and that Thompson paid money to Austin as part of a drug-dealing scheme. He contends that the State failed to exclude this "reasonable hypothesis of innocence[.]"

Under OCGA § 16-5-102 (a), "[a]ny person who knowingly and willfully exploits a disabled adult, elder person, or resident . . . shall be guilty of a felony[.]" OCGA § 16-5-100 (6) defines "[e]xploit" as:

> illegally or improperly using a disabled adult or elder person or that person's resources through undue influence, coercion, harassment, duress, deception, false representation, false pretense, or other similar means for one's own or another person's profit or advantage, including, but not limited to, the illegal taking of resources belonging to a disabled adult or elder person when access to the resources was obtained due to the disabled adult's or elder person's mental or physical incapacity.

An "[e]lder person" means "a person 65 years of age or older."[6]

Here, the testimony from Thompson, the bank employees, and the investigating officer, as well as the other evidence presented at trial, was sufficient for the jury to find that Austin exploited Thompson through deception and false

---

[6] OCGA § 16-5-100 (4).

5

pretense. Although Austin contends that Thompson was not a credible witness, "arguments that go to the weight and credibility that the jury wished to assign to the State's otherwise sufficient evidence present no basis for reversal."[7]

Nor was the jury required to accept Austin's alternative hypothesis that Thompson was involved in a drug-dealing scheme. "To warrant a conviction on circumstantial evidence, the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused."[8] "However, this doctrine only applies when the State's case against the defendant was wholly circumstantial[.]"[9] In this case, the State presented direct evidence through Thompson's testimony. Regardless, "the circumstantial evidence presented was also sufficient for the jury to reject any other reasonable theory except that [Austin] was guilty as charged."[10]

---

[7] *Crawford v. State*, 301 Ga. App. 633, 636 (1) (688 SE2d 409) (2009) (citation and punctuation omitted).

[8] OCGA § 24-14-6.

[9] *Hill v. State*, 297 Ga. 675, 678 (2) (b) (777 SE2d 460) (2015) (citation and punctuation omitted).

[10] Id.; see also *Collett v. State*, 305 Ga. 853, 855 (1) (828 SE2d 362) (2019) ("Not every hypothesis is reasonable, and the reasonableness of alternative hypotheses raised by a defendant is a question principally for the jury.").

(b) Austin alternatively argues that the State presented insufficient evidence as to Count 1 of the indictment. Count 1 of the indictment alleged:

> [B]etween the lst day of August, 2013, and the 31st day of October, 2013, in a continuous criminal scheme, [Austin] did knowingly and willfully financially exploit Keylon Thompson, an elderly person, over the age of sixty-five years, through deception and false pretense, by said accused representing himself as an informant working with the Federal Bureau of Investigation in an investigation, and said accused needed financial support for his expenses during the investigation from the victim, which would be reimbursed from the federal government at the conclusion of the investigation, when said accused knew this representation was false, for said accused's own profit and advantage[.]

Austin contends that the State submitted no checks between these date ranges where Austin purported to be an FBI informant.

At trial, the State introduced into evidence the checks that Austin used to pay rent that were supposedly from Austin's employer. These checks were dated in September and October of 2013. The State also introduced into evidence the checks Thompson wrote to Austin as refunds for Austin's rent. These checks were also dated in September and October of 2013. Thompson testified that he expected to be reimbursed for these checks from the FBI and the government. Given the above, there

7

was sufficient evidence for the jury to find Austin guilty of the charged offense during the date ranges alleged in Count 1 of the indictment.[11]

2. Austin argues that the trial court abused its discretion in admitting into evidence proof of Austin's prior convictions. At trial, the court admitted a 2004 conviction for six counts of forgery and a 2001 conviction for one count of theft by deception. The forgery case involved Austin forging checks that were the same type of checks Austin used to pay rent in this case. The theft by deception case involved Austin posing as a sales manager and taking a down payment for a mobile home.

Under OCGA § 24-4-404 (b) ("Rule 404 (b)"):

> Evidence of other crimes, wrongs, or acts shall not be admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, including, but not limited to, proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

In Georgia, we apply a three-part test to determine whether other acts evidence is admissible under Rule 404 (b): "(1) the evidence must be relevant to an issue other than the defendant's character, (2) the evidence must satisfy the requirements of OCGA § 24-4-403 ('Rule 403'), and (3) the State must offer sufficient proof for the

---

[11] See OCGA § 16-5-102 (a); OCGA § 16-5-100 (6).

8

jury to find that the defendant committed the act."[12] On appeal, Austin contends that the trial court abused its discretion regarding the first two parts of this test.

To begin, the other acts evidence was relevant to prove intent. Austin argued to the jury that all of the reasons given by Thompson for loaning him money were just a front for a drug-dealing scheme. Austin's criminal intent to deceive Thompson was thus at issue.[13]

Additionally, the trial court did not abuse its discretion by failing to exclude the evidence under Rule 403. "[I]t is only *unfair* prejudice, *substantially* outweighing probative value, which permits exclusion of relevant matter."[14] Rule 403 "offers an extraordinary remedy that must be used sparingly because it results in the exclusion of concededly probative evidence. In close cases, the balance is struck in favor of

---

[12] *Naples v. State*, 308 Ga. 43, 49-50 (2) (838 SE2d 780) (2020).

[13] See *Naples*, 308 Ga. at 51 (2) ("[A] defendant who enters a not guilty plea makes intent a material issue, and the State may prove intent by qualifying Rule 404 (b) evidence absent affirmative steps by the defendant to remove intent as an issue.") (citation and punctuation omitted); *Chase v. State*, 337 Ga. App. 449, 455 (3) (a) (787 SE2d 802) (2016) (holding that the trial court did not abuse its discretion in admitting prior convictions for financial identity fraud and forgery because the convictions were relevant to show intent to impersonate a law enforcement officer).

[14] *Chase*, 337 Ga. App. at 455 (3) (a) (punctuation and footnote omitted; emphasis in original).

admissibility."[15] Given the clear questions raised about Austin's intent, his claim to the police that he and Thompson were involved in a drug-dealing scheme, and the fact that all these incidents involved efforts by Austin to obtain funds through deceit, any unfair prejudice did not substantially outweigh the probative value of the other acts evidence.[16]

3. Austin argues that the trial court erred in declining to apply the rule of lenity and sentence him under the theft by deception statute.

> [T]he rule of lenity finds its roots in the vagueness doctrine, which requires fair warning as to what conduct is proscribed. More specifically, the rule of lenity ensures that if and when an ambiguity exists in one or more statutes, such that the law exacts varying degrees of punishment for the same offense, the ambiguity will be resolved in favor of a defendant, who will then receive the lesser punishment. Of course, if it is determined after applying the traditional canons of construction that the relevant statutory text is unambiguous, then the rule of lenity will not apply. The fundamental inquiry when making that assessment is whether the identical conduct would support a conviction under either of two crimes with differing penalties.[17]

---

[15] Id. (punctuation and footnotes omitted).

[16] See id.; *Wilson v. State*, 336 Ga. App. 60, 63 (2) (b) (783 SE2d 662) (2016).

[17] *McNair v. State*, 326 Ga. App. 516, 518-519 (757 SE2d 141) (2014) (punctuation and footnotes omitted).

10

In applying the traditional canons of statutory construction,

our charge as an appellate court is to presume that the General Assembly meant what it said and said what it meant. To that end, we must afford the statutory text its plain and ordinary meaning, consider the text contextually, and read the text in its most natural and reasonable way, as an ordinary speaker of the English language would. In other words, when the language of a statute is plain and susceptible of only one natural and reasonable construction, courts must construe the statute accordingly. Finally, we are also mindful of our duty to construe statutes to give sensible and intelligent effect to all of their provisions and to refrain from any interpretation which renders any part of the statutes meaningless.[18]

"[W]here there is a specific and a general criminal statute, the rule of lenity is not implicated, and a specific statute will prevail over a general statute, absent any indication of a contrary legislative intent."[19] In this vein, the Georgia Supreme Court has cautioned that simply because "a single act may, as a factual matter, violate more

---

[18] *Gordon v. State*, 334 Ga. App. 633, 638-639 (780 SE2d 376) (2015) (punctuation and footnotes omitted).

[19] *State v. Nankervis*, 295 Ga. 406, 409 (2) (761 SE2d 1) (2014) (citations and punctuation omitted) (rule of lenity does not apply between the offenses of trafficking methamphetamine and manufacturing with intent to distribute a controlled substance).

11

than one penal statute[, it] does not [necessarily] implicate the rule of lenity."[20] For example, it is possible for the act of striking another person with an object to meet the definitions of each of the crimes of simple battery, aggravated battery, simple assault, aggravated assault, and malice murder.[21]

Turning to the statutes at issue, a person commits theft by deception under OCGA § 16-8-3 (a) "when he obtains property by any deceitful means or artful practice with the intention of depriving the owner of the property." The definition of "deceives" under this statute includes when the accused "[c]reates or confirms another's impression of an existing fact or past event which is false and which the accused knows or believes to be false[.]"[22] "[A]ny person who commits the offense of theft by deception when the property which was the subject of the theft exceeded $500.00 in value and the offense was committed against a person who is 65 years of age or older shall, upon conviction thereof, be punished by imprisonment for not less than five nor more than ten years."[23]

---

[20] *Gordon*, 334 Ga. App. at 635 (quoting *Banta v. State*, 281 Ga. 615, 618 (2) (642 SE2d 51) (2007)).

[21] See *Gordon*, 334 Ga. App. at 635.

[22] OCGA § 16-8-3 (b) (1).

[23] OCGA § 16-8-12 (b).

Under the exploitation of an elder person statute, OCGA § 16-5-102 (a):

Any person who knowingly and willfully exploits a disabled adult, elder person, or resident, willfully inflicts physical pain, physical injury, sexual abuse, mental anguish, or unreasonable confinement upon a disabled adult, elder person, or resident, or willfully deprives of essential services a disabled adult, elder person, or resident shall be guilty of a felony and, upon conviction, shall be punished by imprisonment for not less than one nor more than 20 years, a fine of not more than $50,000.00, or both.

As noted above, "[e]xploit" is defined as

illegally or improperly using a disabled adult or elder person or that person's resources through undue influence, coercion, harassment, duress, deception, false representation, false pretense, or other similar means for one's own or another person's profit or advantage, including, but not limited to, the illegal taking of resources belonging to a disabled adult or elder person when access to the resources was obtained due to the disabled adult's or elder person's mental or physical incapacity."[24]

An "[e]lder person" means any person 65 years of age or older.[25]

In this case, the indictment alleged that Austin "did knowingly and willfully financially exploit Keylon Thompson, an elderly person, over the age of sixty-five

---

[24] OCGA § 16-5-100 (6).

[25] OCGA § 16-5-100 (4).

13

years, through deception and false pretense[.]" The indictment did not allege, nor did the State prove at trial, any mental or physical incapacity from Thompson. Upon review of both statutes at issue, although there are many ways the crime of exploitation of an elder person may be committed, Austin's conduct, as charged, subjected him to prosecution and sentencing under both OCGA § 16-5-102 (a) and OCGA § 16-8-3 (a).[26] That is, Austin's conduct as charged in this case — obtaining an elder person's property through deceit — "define the same offense" of exploitation of an elder person and theft by deception, "such that an ambiguity is created by different punishments being set forth for the same crime."[27] Accordingly, Austin is entitled to the rule of lenity.[28]

---

[26] See *Gordon*, 334 Ga. App. at 641 (given the defendant's conduct as charged in the case, rule of lenity applied between offenses of making a false statement and false report of a crime); *McNair*, 326 Ga. App. at 521-522 (given the defendant's conduct as charged in the case, rule of lenity applied between offenses of identity fraud and financial transaction card theft). But see *Banta*, 281 Ga. at 618 (2) (given the defendant's conduct as charged in the case, rule of lenity did not apply between offenses of making a false statement and obstruction of a police officer because "the two statutes do not define the same offense[ ]" and the obstruction statute did not require deception or a false representation).

[27] See *Gordon*, 334 Ga. App. at 635 (punctuation and footnotes omitted); id. at 635 (" "The fundamental inquiry when making this assessment [was] whether the identical conduct would support a conviction under either of two crimes[.]") (punctuation omitted).

[28] See id. at 641; *McNair*, 326 Ga. App. at 521-522.

14

We want to emphasize that not every conviction under OCGA § 16-5-102 (a) will result in an application of the rule of lenity. Additionally, a sentence under the theft by deception statute will not benefit every defendant, as that statute has a higher statutory minimum.[29]

Nevertheless, a sentence under the theft by deception statute would benefit Austin in this case. Accordingly, we reverse Austin's convictions for exploitation of an elder person, and remand for resentencing under the theft by deception statute.[30]

*Judgment affirmed in part and reversed in part, and case remanded for resentencing. Markle and Colvin, JJ., concur.*

---

[29] Compare OCGA § 16-8-12 (b) (providing for a minimum of five years), with OCGA § 16-5-102 (a) (providing for a minimum of one year).

[30] See *Gordon*, 334 Ga. App. at 641; *McNair*, 326 Ga. App. at 521-522.