A08A1222. JACKSON v. THE STATE.
(669 SE2d 514)

RUFFIN, Presiding Judge.

A Richmond County grand jury indicted Malcolm Jackson and his co-defendants, Mario Hester and Corey Johnson, for armed robbery and possession of a firearm during the commission of a felony. Jackson was also indicted for possession of a firearm by a convicted felon. Following a jury trial, Jackson was found guilty of all charges. On appeal, Jackson claims that the trial court erred in denying his motion for new trial because (i) the verdict in the case was contrary to evidence and justice and against the weight of the evidence, and (ii) he was entitled to a new trial based on newly discovered evidence. We disagree and affirm.

Viewed in a light most favorable to the verdict, the evidence shows that Oliver Moss, accompanied by two other men, went to a Sprint Food store on Saturday, August 18, 2001. According to Moss, the vehicle of the "lady that worked in the store" was parked in front of the ATM that he was using. Moss saw a masked man run across the parking lot, get into the automobile, and put a gun to the woman's head. Moss testified that the woman "almost passed out . . . she was panicking."

The victim gave something to the gunman, who then exited the vehicle and ran down a pathway into the woods. Moss followed him, but ran away to call the police when the man showed his gun. While

---

[19] (Citations omitted.) *Timber Equip. v. McKinney*, 166 Ga. App. 757, 757-758 (1) (305 SE2d 468) (1983).

Moss and his companions were waiting for the police to arrive, a blue car with white stripes picked up the gunman. Moss was able to get the vehicle's tag number. The victim was crying and in shock when Moss returned to the store.

The victim, Tasha O'Brien,[1] was the assistant manager of the Sprint Food store. Her duties included depositing cash at the bank, which closed at noon on Saturdays. Jackson, who was O'Brien's boyfriend, called her at approximately 11:00 a.m. on the day of the robbery to "see what [she] was doing." She told him she was preparing to take the money to the bank.

According to O'Brien, she took $10,000 from the safe with the intention of taking the money to the bank. The district manager was supposed to follow O'Brien to the bank, but he did not contact her. O'Brien decided she needed to deposit the money, so she "just went" at approximately 11:30 a.m. She was getting into her car when a man jumped into the back, put a gun to her head, and demanded, "Bitch[,] give it up." O'Brien gave the man the money and then went into the store where someone called 911. O'Brien testified that she was not involved in planning a theft of the money.

Police were able to link a sighting of the getaway car to a second vehicle, which was seen towing the getaway car on a car trailer, and then connected the second vehicle to Hester's girlfriend. Police then interviewed Hester, who eventually admitted he was involved in the robbery. Hester stated that Johnson had taken the money from O'Brien while he and Jackson waited in the car. Hester told police that O'Brien was not involved and did not know about the robbery. The officer told Hester that it would not be a robbery but a theft of money if O'Brien was in on the plan, but Hester continued to maintain that O'Brien was not involved.

Jackson also made a statement to police in which he maintained that he planned the robbery with Hester and Johnson. According to Jackson, Johnson went to get the money while he and Hester parked around the corner. Jackson insisted that O'Brien had no involvement in and no prior knowledge of the plan, and he was also advised by an officer that if she had been involved that the crime would be considered a theft.

1. Relying on OCGA §§ 5-5-20 and 5-5-21, Jackson contends that the trial court erred in denying his motion for a new trial because the verdict was contrary to evidence and justice and because it was

---

[1] The victim's name is spelled "O'Brien" in the indictment and the transcript, although Jackson refers to "O'Bryant" in his brief and her name is spelled "O'Bryant" in the transcripts of Hester's and Johnson's trials.

against the weight of the evidence. However, "[n]o court except the trial court is vested by OCGA §§ 5-5-20 and 5-5-21 with the authority to grant a new trial in a matter relating to the weight of the evidence."[2] Rather, this court reviews the evidence to determine "if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[3]

Jackson argues that there was reasonable doubt as to whether O'Brien was involved and complicit in the incident, pointing to, among other things, evidence that Jackson used O'Brien's credit card with her permission to rent the trailer that was used to move the getaway car, and that O'Brien left for the bank at 11:30 a.m. and not her usual time of 11:45 a.m. But O'Brien testified that Jackson told her only that he needed the trailer to help someone move, and the particular time O'Brien left for the bank does not necessarily implicate her as a conspirator. Rather, the evidence was more than sufficient for any rational trier of fact to conclude beyond a reasonable doubt that Jackson was guilty of the armed robbery of O'Brien as charged in the indictment. Accordingly, Jackson's claims are without merit.

2. Jackson also contends that the trial court erred in denying his motion for a new trial based on newly discovered evidence. We disagree.

The three co-defendants were tried separately, with Johnson's trial occurring last.[4] During Johnson's trial, his defense counsel asked O'Brien, "How much of the money did you get from Malcolm [Jackson] in connection with this incident?" She responded, "I got about five hundred." Jackson contends that this constituted new evidence, never testified to by O'Brien, pointing to her complicity in the theft from Sprint Food.[5]

---

[2] *Clark v. State*, 249 Ga. App. 97 (547 SE2d 734) (2001).

[3] *Collinsworth v. State*, 276 Ga. App. 58, 59 (622 SE2d 419) (2005). See *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[4] Jackson asserts that Johnson was acquitted of armed robbery, and the State does not dispute this claim.

[5] Jackson points to other portions of O'Brien's testimony and investigators' testimony as to O'Brien's prior statements that differed from her testimony in Jackson's trial. For example, in Johnson's trial, O'Brien testified that Jackson said he wanted to rent the trailer to help his uncle move, while she never mentioned the uncle as the person being moved in Jackson's trial. However, Jackson was not entitled to a new trial simply to show these inconsistencies. "[A] new trial will not be granted if the only effect of the evidence will be to impeach the credit of a witness." (Punctuation omitted.) *Timberlake v. State*, 246 Ga. 488, 491 (1) (271 SE2d 792) (1980). To the extent there was new evidence, excepting possibly O'Brien's testimony as to the "five hundred" she received from Jackson, Jackson fails to show it was so material as to probably produce a different verdict. See *Young v. State*, 269 Ga. 490, 491-492 (2) (500 SE2d 583) (1998).

There are six requirements for granting a new trial based on newly discovered evidence:

> (1) that the evidence has come to [defendant's] knowledge since the trial; (2) that it was not owing to the want of due diligence that he did not acquire it sooner; (3) that it is so material that it would probably produce a different verdict; (4) that it is not cumulative only; (5) that the affidavit of the witness himself should be procured or its absence accounted for; and (6) that a new trial will not be granted if the only effect of the evidence will be to impeach the credit of a witness.[6]

"A trial court's denial of a motion for new trial [based on newly discovered evidence] will not be reversed unless it affirmatively appears that the court abused its discretion."[7]

Pretermitting whether the testimony at issue meets some of these requirements, it fails the first — "that the evidence has come to [Jackson's knowledge] since the [prior] trial."[8] According to the alleged new evidence, O'Brien got "five hundred" from *Jackson* in connection with the incident. It can be reasonably inferred that if O'Brien's testimony is true, then Jackson would have known about this evidence at the time of his trial.[9] Jackson also maintains that O'Brien perjured herself during his trial, but he fails to show that O'Brien ever recanted her testimony, and, in any event, her alleged perjury would not in itself constitute grounds for a new trial.[10] *Burke v. State*,[11] on which Jackson relies, does not require a different result, particularly as this is not a case "where it is shown and not denied that a conviction was procured by perjured testimony, which testimony the State's prosecuting attorney knew to be perjured at the time it was introduced. . . ."[12] The trial court did not err in concluding that Jackson was not entitled to a new trial based on newly discovered evidence.

*Judgment affirmed. Andrews and Bernes, JJ., concur.*

---

[6] (Punctuation omitted.) *Timberlake*, supra.

[7] *Young*, supra.

[8] *Timberlake*, supra.

[9] See *Grover v. State*, 215 Ga. App. 907, 908 (2) (452 SE2d 586) (1994) ("if defendant's girl friend was truly an alibi witness, defendant knew of the existence of her testimony long before the time of trial").

[10] See, e.g., *Morrison v. State*, 256 Ga. App. 23, 26 (4) (567 SE2d 360) (2002) ("[t]he law is settled that a post-trial declaration by a State's witness that his former testimony was false is not a ground for a new trial") (punctuation omitted).

[11] 205 Ga. 656 (54 SE2d 350) (1949).

[12] Id. at 659. Our Supreme Court in that case also affirmed the overruling of defendant's motion for new trial based on allegations that a State witness had perjured himself.

DECIDED NOVEMBER 14, 2008.

*Catherine V. Ryan*, for appellant.
*Daniel J. Craig, District Attorney, William L. Bowcutt, Assistant District Attorney*, for appellee.