NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.

In the Supreme Court of Georgia

Decided: May 17, 2022

S22A0564. HOUNKPATIN v. THE STATE.

PETERSON, Justice.

Bertrand Hounkpatin was convicted of felony murder for the death of his two-year old stepson, Noel Johnson.[1] On appeal, Hounkpatin argues that the evidence presented at trial was insufficient to support his conviction. He also argues that the trial court abused its discretion by (1) admitting other-acts evidence under OCGA § 24-4-404 (b) ("Rule 404 (b)") that he physically

---

[1] The crimes occurred on January 25, 2014. In June 2019, a Gwinnett County grand jury indicted Hounkpatin on three counts of felony murder (predicated on cruelty to children in the first degree (Count 1), aggravated battery (Count 2), and aggravated assault (Count 3)). At a jury trial in August 2019, Hounkpatin was found guilty on all counts. The trial court sentenced him to serve life in prison without the possibility of parole on Count 1 and, although the trial court purported to merge the other counts, they were vacated by operation of law. See *Leeks v. State*, 296 Ga. 515, 523-524 (7) (769 SE2d 296) (2015). Hounkpatin moved for a new trial, which the trial court denied following a hearing. Hounkpatin filed a timely notice of appeal. His case was docketed to this Court's April 2022 term and submitted for a decision on the briefs.

assaulted his stepchildren and (2) preventing him from presenting Rule 404 (b) evidence that two of his stepchildren, who were State's witnesses, had been violent towards Noel and each other. We conclude that the evidence is sufficient to sustain Hounkpatin's conviction. The trial court did not abuse its discretion in admitting other-acts evidence showing that Hounkpatin squeezed Noel and one of his siblings around their ribs; that evidence was relevant to whether Hounkpatin had the intent to commit the predicate felony of cruelty to children in the first degree and otherwise met the requirements of Rule 404 (b). Any error in admitting other evidence that Hounkpatin slapped or hit the children was harmless. And the trial court did not abuse its discretion in excluding evidence about the witnesses' conduct that did not bear on whether they were responsible for Noel's death. We therefore affirm.

The trial evidence showed that Hounkpatin and Donique Howell met in early 2012 and married less than two years later. By January 2014, the couple had a child, E. H., together and lived with

2

Howell's minor children from prior relationships — K. H., C. H., R. H., A. H., and Noel, who was two years and nine months old.

On the morning of January 25, Howell left the children in Hounkpatin's care when she went to work. Before leaving, Howell said goodbye to the older children, checked on the younger ones who were still sleeping, and gave a kiss to Noel, who moved but did not get out of bed.

After the children ate breakfast, Hounkpatin took E. H., a baby, into his room while the rest of the children watched a movie in their room. Hounkpatin then called A. H., who was three years old, and Noel into his bedroom. Soon after, K. H., who was 11 years old, heard hitting noises and crying; R. H., who was 7 years old, heard beating or slapping and crying; and C. H., who was 9 years old, heard crying and two hitting sounds. Once the crying stopped, Hounkpatin returned to the children's bedroom, carrying Noel, who appeared to be asleep, and placing him on a bed.

Hounkpatin left the room but returned later in what K. H. described as a "very short time . . . so there wasn't any time for us to

move about anything much." Hounkpatin appeared to wake Noel by shaking him and putting him in the shower. Noel was unresponsive, and Hounkpatin called 911. Paramedics arrived, found Noel to have no pulse or respiration, and performed CPR continuously while transporting him to a hospital. When Howell arrived at the hospital a short time later, she was informed that Noel had died.

Medical examiner Dr. Carol Terry, who performed an autopsy, concluded that Noel's manner of death was homicide and the cause of his death was asphyxia from chest compression that fractured his ribs. Dr. Terry concluded that severe compression deprived Noel's brain of oxygen for a significant period of time. Another doctor who was qualified as an expert in child-abuse pediatrics testified that Noel's autopsy revealed several fractures of consecutive ribs — some that were healing and some that had healed and were re-fractured — and the fractures were posterior and lateral. This pediatrician testified that posterior and lateral fractures of consecutive ribs were indicative of "an adult" placing "their hands around" a young child's chest and squeezing with a "significant" or "violent" force. The

pediatrician also testified that it is "exceedingly rare" for children to suffer rib fractures from having CPR performed on them; fractures caused by CPR are usually anterior and not posterior; and, based on the degree to which some of Noel's fractures were healing, any CPR causing them would have to have been performed 10 to 14 days before his death.

R. H., C. H., and K. H. testified at Hounkpatin's trial about what they overheard on the morning of Noel's death. Under Rule 404 (b), the children were also allowed to testify about prior occasions on which Hounkpatin had hit them or their siblings. R. H. testified that she had seen Hounkpatin hit Noel once, and had heard slapping noises similar to those she heard on the day of Noel's death "a good amount" of the time when Noel or A. H. were in another room with Hounkpatin. C. H. testified that Hounkpatin had hit him previously, and that he saw Hounkpatin hit other siblings, including Noel, a "few times." K. H. said she saw Hounkpatin hit C. H., A. H., and Noel "a couple of times" and saw Hounkpatin squeeze Noel and A. H. around the rib cage, causing them to cry or strain to speak.

5

Hounkpatin testified in his own defense at trial. He denied ever squeezing Noel or harming Noel or the other children, and said that K. H. would beat the other children. Hounkpatin also mentioned an incident when he noticed that Noel was not walking properly and asked C. H. and R. H. if anything had happened. According to Hounkpatin, C. H. reported that K. H. "threw" Noel into his crib and Noel's leg got caught, while R. H. said that it was C. H. who "push[ed]" Noel into the crib. Hounkpatin also testified that Howell had reported to him about a month before Noel's death that Noel had fallen down the stairs at his grandmother's house, but that other than a bump on Noel's head and his having a fever, Hounkpatin could not tell if Noel was hurt or acted any differently.

Hounkpatin also called a forensic expert, Dr. Kris Sperry, who testified that the autopsy report showed that Noel had only rib fractures and no other signs of an acute injury indicative of being squeezed strongly, such as skin bruising or hemorrhaging of the eyes, the surface of the lungs, or other body parts. Dr. Sperry also testified that the rib fractures that occurred at the time of Noel's

death could have occurred from forceful CPR and that prior fractures could have occurred from a fall or some other abuse. Dr. Sperry opined that, based on a review of Noel's autopsy and medical records, he died as a result of a seizure based on a preexisting brain injury, without any contribution from the rib fractures.

The State then recalled Dr. Terry, who testified that, upon receiving the defense expert's report, she questioned whether Dr. Sperry had actually reviewed slides containing samples of Noel's brain because his opinion was so inconsistent with her observations and Dr. Sperry did not include the slides in listing the items he reviewed. Dr. Terry explained that she later confirmed that Dr. Sperry had not reviewed the slides, as she received his request for them after he prepared his report.[2]

1. Hounkpatin argues that the evidence presented at trial was insufficient to support his felony murder conviction because the evidence was purely circumstantial and there was evidence — adduced at trial and proffered in support of his denied Rule 404 (b)

---

[2] Dr. Sperry testified that he received the slides prior to his testimony.

motion — that others had both the opportunity and propensity to commit the charged acts.[3] We disagree.

When evaluating the sufficiency of evidence as a matter of constitutional due process, we must determine whether a rational trier of fact could have found the defendant guilty beyond a reasonable doubt. See *Jackson v. Virginia*, 443 U.S. 307, 319 (99 SCt 2781, 61 LE2d 560) (1979). In doing so, "we view the evidence in the light most favorable to the verdict, and we put aside any questions about conflicting evidence, the credibility of witnesses, or the weight of the evidence, leaving the resolution of such things to the discretion of the [jury]." *Wilkerson v. State*, 307 Ga. 574, 574 (837 SE2d 300) (2019) (citation and punctuation omitted).

As a matter of Georgia statutory law, to convict a defendant based on circumstantial evidence, the proven facts must be consistent with the hypothesis of guilt and exclude every reasonable

---

[3] Hounkpatin also challenges the sufficiency of the evidence regarding Counts 2 and 3, but his challenges to these counts are moot because they were vacated by operation of law. See *Welch v. State*, 306 Ga. 470, 473 (1) n.5 (831 SE2d 761) (2019).

hypothesis save that of guilt. See OCGA § 24-14-6. "Not every hypothesis is reasonable, and the evidence does not have to exclude every conceivable inference or hypothesis; it need rule out only those that are reasonable." *Cochran v. State*, 305 Ga. 827, 829 (1) (828 SE2d 338) (2019) (citation and punctuation omitted). It is for the jury to determine whether an alternative hypothesis is reasonable, and we will not disturb the jury's finding unless it is unsupportable as a matter of law. See *Outler v. State*, 305 Ga. 701, 703 (1) (a) (827 SE2d 659) (2019).

The felony murder count of which Hounkpatin was convicted charged him with the predicate offense of cruelty to children in the first degree — causing Noel's death "by unlawfully and maliciously causing him cruel and excessive physical pain through asphyxiation[.]" The evidence presented at trial was sufficient to support a conviction on this count. Although there was conflicting opinion testimony regarding Noel's cause of death, the jury was entitled to credit the State's two experts' testimony that Noel died from an acute injury — asphyxia from a chest compression that

fractured Noel's ribs — and that a significant amount of force was necessary to fracture Noel's ribs and cause his death. We defer to the jury's resolution of conflicting evidence, the credibility of the expert witnesses, and the weight of the evidence. See *Wilkerson*, 307 Ga. at 574.

In the same way, the jury was authorized to conclude that, due to the severe force used to compress his chest and the fact that he could not breathe as a result, Noel experienced cruel and excessive physical pain. The jury was also authorized to conclude that Hounkpatin inflicted these injuries. Hounkpatin was the only adult taking care of Noel and the other children at the time Noel suffered his injuries. Several of the other children testified that when Noel went to Hounkpatin's room, they heard noises consistent with physical abuse. The children also testified that, soon after they heard those noises, Hounkpatin carried Noel back into the room where they were and that Noel was unresponsive a short time later.

Although Hounkpatin suggests that one of his stepchildren could have killed Noel, and that the rib fractures were not evidence

of violence but only of CPR, the jury was entitled to reject that hypothesis as unreasonable. The child-abuse pediatrician testified that Noel's consecutive rib fractures were indicative of "an adult" placing "hands around" his chest and squeezing with a "significant" or "violent" force; it was "exceedingly rare" that a young child's rib would fracture as a result of CPR; any fractures would be anterior fractures, not the posterior and lateral ones seen in Noel's ribs; and Noel had older rib fractures that were in various states of healing, meaning that CPR would have had to be performed before the day of Noel's death and there was no evidence that CPR had been performed on Noel before the day of his death. Viewed as a whole, this evidence was sufficient to support Hounkpatin's convictions as a matter of due process and under OCGA § 24-14-6.

2. Hounkpatin next argues that the trial court abused its discretion in admitting evidence that he had physically assaulted Noel and the other children prior to Noel's death. The trial court admitted the evidence under Rule 404 (b) for the purposes of showing intent, motive, and opportunity. We review the trial court's

11

decision to admit Rule 404 (b) evidence for an abuse of discretion, see *Kirby v. State*, 304 Ga. 472, 479 (4) (819 SE2d 468) (2018), and conclude that the trial court did not abuse its discretion in admitting some of the evidence for the purpose of showing intent.[4]

Under Rule 404 (b), "[e]vidence of other crimes, wrongs, or acts shall not be admissible to prove the character of a person in order to show action in conformity therewith[,]" but such evidence may be admissible for other purposes, including to prove intent, motive, and opportunity. See OCGA § 24-4-404 (b) (containing non-exhaustive list of permissible purposes); *State v. Jones*, 297 Ga. 156, 159 (2) (773 SE2d 170) (2015) (Rule 404 (b) "is, on its face, an evidentiary rule of inclusion which contains a non-exhaustive list of purposes other than bad character for which other acts evidence is deemed relevant and may be properly offered into evidence"). When the State seeks to introduce other-acts evidence under Rule 404 (b), it must show

---

[4] Because we conclude that the evidence was properly admitted for the purpose of intent and Hounkpatin raises no claim regarding jury instructions, we need not address his argument that the trial court erred in admitting the evidence for the purposes of showing motive and opportunity. See *Naples v. State*, 308 Ga. 43, 52 (2) n.9 (838 SE2d 780) (2020).

that (1) the evidence is relevant to an issue in the case other than the defendant's character; (2) the probative value of the evidence is not substantially outweighed by its undue prejudice under OCGA § 24-4-403 ("Rule 403"); and (3) there is sufficient proof for a jury to find by a preponderance of the evidence that the defendant committed the other act. See *Jones v. State*, 301 Ga. 544, 545 (802 SE2d 234) (2017).

(a) *Evidence Hounkpatin squeezed children around the rib cage on prior occasions*.

We conclude that the other-acts evidence that Hounkpatin had squeezed Noel and A. H. around the rib cage was admissible, at least as to Hounkpatin's intent. As to the first prong of the Rule 404 (b) test, Hounkpatin made intent a material issue in the case by pleading not guilty and not taking affirmative steps to remove intent as an issue. See *Bradshaw v. State*, 296 Ga. 650, 656-657 (3) (769 SE2d 892) (2015). The evidence that Hounkpatin squeezed Noel and A. H. around the rib cage, causing them to cry, was relevant to that issue, as it evinced his intent unlawfully to cause them "cruel and

13

excessive physical pain." As discussed above, that same intent was at issue here. The State predicated the felony murder count on cruelty to children in the first degree, so it was required to prove that Hounkpatin intended to inflict "cruel and excessive pain" and as a result caused Noel's death. The other-acts evidence was therefore relevant to prove Hounkpatin's intent to cause Noel's fatal injury. See *Naples v. State*, 308 Ga. 43, 51-52 (2) (838 SE2d 780) (2020) (defendant's prior acts of swinging one child "upside down and shaking her" and grabbing another "by the neck and throat" were admissible as other-acts evidence because the prior acts met statutory elements for cruelty to children in the first degree, the same offense underlying the defendant's felony murder charge based on either slamming the victim's head against a hard object or throwing her down the stairs).

As to the second Rule 404 (b) prong, in evaluating the probative value of other-acts evidence offered to prove intent, we consider the overall similarity between the other acts and the charged crimes, the acts' temporal remoteness, and the prosecutorial need for them.

14

See *Hood v. State*, 309 Ga. 493, 501 (2) (847 SE2d 172) (2020).

Hounkpatin argues that the other-acts evidence had no probative

value on the issue of intent because he "either intentionally

squeezed Noel to death, or he did not." But the required intent was

whether Hounkpatin intended "unlawfully and maliciously" to cause

Noel "cruel and excessive physical pain," and the prior acts were

highly probative on that point given the overall similarities between

the offenses, their temporal proximity, and the prosecution's need

for them. As discussed previously, Hounkpatin's squeezing of Noel

and A. H. around the rib cage is the same type of act alleged to have

caused Noel's death — chest compression causing asphyxiation. And

these acts occurred within two years of Noel's death.[5] See, e.g.,

*Fleming v. State*, 306 Ga. 240, 248 (3) (b) (830 SE2d 129) (2019) (the

other-acts evidence had a high probative value where the similar

incident occurred less than one year after the charged crimes); see

---

[5] The exact timing of the other acts is unclear from the record, but the evidence shows that Hounkpatin arrived in the United States in January 2012, he met Howell soon thereafter, and Noel was two years and nine months old when he died in January 2014.

15

also *United States v. Ramirez*, 426 F3d 1344, 1354 (11th Cir. 2005) (other acts were probative where they occurred three years prior to charged crimes).[6]

Hounkpatin argues that the prosecution's need for the other-acts evidence was minimal because he did not claim mistake or accident as a defense. The State responds that the prosecution's need was high because the other-acts evidence negated Hounkpatin's defense that he never hurt the children, someone else committed the injurious act, and performing CPR on Noel contributed to his rib fractures. Even if not critical to the State's prosecution, the other-acts evidence helped rebut Hounkpatin's defenses and proved that he acted with malicious intent to cause Noel "cruel and excessive pain."[7] Moreover, given the substantial

---

[6] Because Rules 403 and 404 (b), the evidentiary provisions at issue here, "largely track their counterparts in the Federal Rules of Evidence," we look "to the decisions of the federal appellate courts, particularly the Eleventh Circuit, for guidance in construing and applying these provisions." *Kirby*, 304 Ga. at 480 (4) n.5.

[7] The prosecution's need for the other-acts evidence was not minimal when Hounkpatin claimed that he never squeezed the children and that someone else must have been responsible for Noel's death, and the only eyewitnesses present in the room when the injury occurred were E. H., who

16

similarities between the other acts and the charged crime, the two-year gap between the offenses did not diminish the probative value of the other-acts evidence. See *Moon v. State*, 312 Ga. 31, 55-56 (3) (d) (860 SE2d 519) (2021) (the seven-year gap between the prior crimes and the charged offenses "diminished somewhat" the probative value of the other-acts evidence, but that probative value was still "significant" where the prior crimes shared many similarities to the charged crimes and the prosecution had a need for the evidence); see also *United States v. Ellisor*, 522 F3d 1255, 1268 (11th Cir. 2008) (given the "striking" similarities between the incidents, the four-year separation between the other acts and the charged crimes did not "significantly depreciate" the probative value of the other-acts evidence); *United States v. Cardenas*, 895 F2d 1338, 1344 (11th Cir. 1990) (providing that "[t]the probative value of the

---

was just a baby, and A. H., who was just three years old. The other-acts evidence that Hounkpatin previously compressed young children's chests was substantially probative of whether he squeezed Noel's chest on this occasion with "malicious" intent to cause Noel "cruel and excessive pain."

But the prosecution's need for the evidence was not high, either, because intent was not a critical issue. Hounkpatin either squeezed Noel forcefully, in which case intent was almost certainly present, or he did not. Hounkpatin did not argue that he inflicted the injuries but without the requisite intent.

extrinsic offense correlates positively with its likeness to the offense charged" and an extrinsic offense carries more probative value where less time separates it from the charged offense) (citation and punctuation omitted).

In arguing that he suffered prejudice from the admission of the other-acts evidence, Hounkpatin relies solely on his arguments that the evidence was not relevant for a proper purpose and lacked probative value. But we have rejected these arguments. The evidence was, of course, prejudicial to Hounkpatin, but Rule 403's exclusionary force is meant to be applied "sparingly" — primarily when the other-acts evidence has "scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect." *Hood v. State*, 299 Ga. 95, 102-103 (4) (786 SE2d 648) (2016) (citations and punctuation omitted); see also *Anglin v. State*, 302 Ga. 333, 337 (3) (806 SE2d 573) (2017) ("[I]n a criminal trial, inculpatory evidence is inherently prejudicial; it is only when *unfair* prejudice substantially outweighs probative value that [Rule 403] permits exclusion." (citation and punctuation omitted; emphasis in

18

original)). Given the substantial probative value of the evidence in proving Hounkpatin's intent, the trial court did not abuse its discretion in determining that unfair prejudice to Hounkpatin did not substantially outweigh it.

With respect to the remaining prong of Rule 404 (b), Hounkpatin argues that the State did not submit sufficient proof for the jury to find by a preponderance of the evidence that he committed the other acts. In challenging the admission of the other-acts evidence below, Hounkpatin argued that the incidents were based on statements from Howell's children, the children never previously reported the incidents, and their statements were not corroborated. But we have concluded that testimony about prior acts of violence committed against the witness or that the witness observed firsthand is sufficient to meet the third prong of Rule 404 (b). See, e.g., *Thompson v. State*, 308 Ga. 854, 860 (2) (843 SE2d 794) (2020); *Smart v. State*, 299 Ga. 414, 419 (2) (c) (788 SE2d 442) (2016). And here, K. H. testified that she saw Hounkpatin squeeze Noel and A. H. around the rib cage. Because the State met its burden of

19

meeting the Rule 404 (b) test, at least with respect to the issue of intent, the trial court did not abuse its discretion in admitting the other-acts evidence of Hounkpatin's squeezing Noel and A. H. for this purpose.

(b) *Other-acts evidence of purported child abuse.*

Some of Hounkpatin's other acts towards the children, such as slapping or hitting them, may have been less violent and may not have involved the same intent as the predicate offense of cruelty to children in the first degree. But even if those acts were inadmissible, their admission was harmless error. "The test for determining nonconstitutional harmless error is whether it is highly probable that the error did not contribute to the verdict." *Smith v. State*, 299 Ga. 424, 432 (2) (d) (788 SE2d 433) (2016) (citations and punctuation omitted). Here, the evidence pointed to an adult causing Noel's injuries, Hounkpatin being the only adult present when the injuries occurred, the injuries being caused by a forceful squeezing around the rib cage, and Hounkpatin having previously squeezed Noel in this manner. Given this evidence, it is highly probable that the

admission of evidence that Hounkpatin also hit his stepchildren on several occasions did not contribute to the jury's verdict. Therefore, the admission of this evidence was harmless. See *Kirby*, 304 Ga. at 487 (4) (c) (concluding that improper admission of one prior violent act was harmless where other Rule 404 (b) evidence of violent crimes was admitted along with compelling evidence of defendant's guilt).

3. Hounkpatin next argues that the trial court erred in denying his motion to present Rule 404 (b) evidence of alleged violent acts by K. H. and C. H. that would have shown that these witnesses had the opportunity to commit the crimes against Noel. We disagree.

Before trial, Hounkpatin filed a notice of intent to present Rule 404 (b) evidence that K. H. and C. H. had been violent to Noel, each other, and others, saying records from the Division of Family and Children Services ("DFCS") indicated as much. At a pretrial hearing on his motion, Hounkpatin confirmed that the DFCS records did not show any violence directed at Noel and, in fact, occurred years after Noel's death. According to the records, a November 2017 report indicated that C. H. was acting violently and aggressively as a result

of not taking mental health medication, and there was an incident in November 2018 in which K. H. tried to jump out of a moving car and C. H. grabbed K. H. around the waist to force K. H. back inside the car.

The State objected on relevance grounds to the admission of any acts of violence occurring after Noel's death, but did not object to any acts that occurred at or before such time. The trial court took the matter under advisement, denied Hounkpatin's Rule 404 (b) motion at the start of his trial on relevance grounds, and allowed Hounkpatin to proffer the DFCS records. Although the trial court did not allow Hounkpatin to introduce records showing incidents occurring after Noel's death, it did not prevent him from testifying about incidents in which C. H. or K. H. hurt Noel or the other children prior to Noel's death, which he did as recounted above.

On appeal, Hounkpatin argues that the trial court abused its discretion in denying his Rule 404 (b) motion because his proposed evidence showed C. H.'s and K. H.'s motive for accusing him of killing Noel, their opportunity to commit the charged crimes against

Noel, and their intent in doing so.

To introduce evidence implicating another person in the commission of the crimes with which a defendant is charged, the defendant must show that it

> raise[s] a reasonable inference of the defendant's innocence, and [either] directly connect[s] the other person with the corpus delicti, or show[s] that the other person has recently committed a crime of the same or similar nature. Evidence that merely casts a bare suspicion on another or raises a conjectural inference as to the commission of the crime by another is not admissible.

*Elkins v. State*, 306 Ga. 351, 358 (2) (b) (830 SE2d 217) (2019) (citations and punctuation omitted).

To the extent that Hounkpatin argues on appeal that he was prevented from presenting *any* evidence that C. H. and K. H. were violent towards the victim or each other, that claim is meritless. The trial court allowed him to present his testimony concerning incidents that occurred prior to Noel's death.

To the extent that Hounkpatin complains about evidence contained in the DFCS records, that claim is also meritless.

23

Hounkpatin points to no evidence in the DFCS records directly connecting C. H. or K. H. to Noel's death, no incidents that were the same or similar in nature to the charged offenses, and no incidents that occurred near in time to Noel's death. In fact, the DFCS records show that the incidents in question occurred three to four years after Noel's death. The proffered evidence does not support even a bare suspicion that C. H. or K. H. killed Noel. Therefore, the trial court did not abuse its discretion in excluding the evidence from the DFCS records.

*Judgment affirmed. All the Justices concur.*