**FIRST DIVISION
BARNES, P. J.,
LAND and WATKINS, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**October 31, 2023**

# In the Court of Appeals of Georgia

A23A0887. CHAMPION v. THE STATE.

WATKINS, Judge.

A jury found Eddie Champion guilty of three counts of identify fraud, two counts of forgery in the third degree, and one count each of possession of less than one ounce of marijuana, making a false statement, speeding, driving with a suspended license, and possession of a firearm by a convicted felon.[1] On appeal, he argues that: (1) insufficient evidence supported his convictions for identity fraud, forgery, and possession of marijuana; (2) the jury's verdict was contrary to the principles of justice and equity under OCGA §§ 5-5-20 and 5-5-21; (3) the trial court abused its discretion in admitting other acts evidence; (4) trial counsel provided ineffective assistance; and

---

[1] See OCGA §§ 16-9-121 (a) (1); 16-9-1 (d); 16-13-30 (j) (1); 16-10-20; 40-6-181; 40-5-121 (a); 16-11-131 (b).

(5) the cumulative effect of the errors at trial violated his right to a fair trial. For the reasons set forth below, we affirm.

"On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict, and the appellant no longer enjoys the presumption of innocence."[2] So viewed, the record shows that, in April 2016, Deputy Kris Herrick with the Crisp County sheriff's office observed Champion driving 85 miles per hour when the posted speed limit was 70 miles per hour. Herrick initiated a traffic stop, and Champion pulled over onto the shoulder. Herrick made contact on the passenger side of the vehicle. He observed five occupants: Champion in the driver's seat, a man later identified as Joseph Walker in the front passenger seat, two women later identified as Jessica Patten and Kevanique Bennett in the rear seats, and a juvenile in the rear-middle seat. Patten claimed that she was Champion's wife.

As soon as the passenger's side window was down, Herrick smelled the odor of raw marijuana emanating from the vehicle. Herrick asked Champion for his driver's license, and Champion patted down his pockets and responded that he did not have it on his person. Champion told Herrick that the driver's license was located somewhere in the vehicle. When Champion searched the sunglasses holder above his

---

[2] *Ramirez-Ortiz v. State*, 361 Ga. App. 577, 579 (1) (865 SE2d 206) (2021).

2

head, a debit card fell out. Herrick then asked Champion to step out of the vehicle and step to the rear.

When Herrick asked Champion for his name, Champion replied that it was Vincent Crenshaw. Herrick asked Champion to write his name and birthday on a notepad, and Champion wrote Crenshaw's name down. Herrick ran the name and birthday through his computer and did not get any matches. When Herrick asked Champion for his social security number, Champion refused, claiming that he was previously a victim of identity fraud and did not want to give out the number. Herrick re-ran Crenshaw's name with a different birthday, and received a result, along with Crenshaw's social security number. When Herrick asked Champion to provide the social security number to see if it matched, Champion again refused. Herrick observed that Crenshaw's picture did not match Champion's appearance.

Herrick decided to search the vehicle due to the odor of marijuana. Herrick started with the center console because Champion avoided that area when he was searching for his driver's license. There, Herrick discovered a glass jar containing suspected marijuana and a grinder. Herrick found signed blank business checks for InstaLoan and USAA in the passenger glove box. Herrick also discovered in the glove box a check from Gallagher Bassett Services made out to Dominique Sutton

and a rental agreement indicating that Patten had rented the car. Herrick located the debit card that fell from the sunglasses holder in the front seat area. The debit card belonged to Sutton.

In the passenger floorboard, Herrick located a handgun with a bullet in the chamber. He also found a receipt for the handgun made out to Champion and two packing slips made out to Champion for handgun accessories. Finally, Herrick discovered two receipts for money orders from Walmart as well as the actual money orders.

When Herrick started to arrest the other occupants of the vehicle, Champion claimed that the marijuana was his. Herrick arrested Champion, and Champion maintained Crenshaw's identity throughout the booking process. The police discovered Champion's true identity after they fingerprinted him. During a custodial interview, Champion claimed ownership of everything in the vehicle, including ownership of the handgun and marijuana. However, when the interviewer asked about the checks, Champion denied ownership. Champion denied that the other occupants of the vehicle were involved in any criminal activity.

An investigator testified that she received the bank records for Sutton's debit card — the debit card that fell out of the sunglasses holder. Two days before

4

Champion's arrest, there was an ATM check deposit for $3,919.52. One day before the arrest, there was an ATM check deposit for $4,689.52. The bank statement also showed purchases from Walmart for $2,497.10 and $2,001.40. These matched the Walmart receipts found in the vehicle. The money orders were purchased from the Walmart only about an hour and 20 minutes before the traffic stop. Both of the checks were later returned as "altered or fictitious," resulting in Sutton's account becoming overdrawn. Sutton — a servicewoman stationed in Kuwait — did not agree to have her account overdrawn in this way or have the Gallagher Bassett Services check printed in her name. According to business records from Gallagher, the Gallagher check was originally made out to a different individual in a different amount.

With respect to the blank checks found in the vehicle, investigators discovered five blank USAA checks and two sheets of InstaLoan checks. InstaLoan had recently experienced a theft of some of its blank checks. The USAA checks were counterfeit and fictitious. The scheme involved depositing the checks, immediately removing the money, and then purchasing money orders in order to spend the money without a trace.

Following a limiting instruction, the State also introduced other acts evidence in order to prove knowledge and intent. An investigator described a scheme where

original checks were stolen from mailboxes and then remade or duplicated using blank checks purchased at office supply companies. The investigator testified that, in July 2014, an individual named Anthony Bankston gave his bank card to other persons in order to defraud USAA. Counterfeit checks were deposited into Bankston's account, and money was withdrawn from the account before the bank marked the checks as invalid. The investigator suspected Champion and Patten as perpetrators of the scheme. The investigator was able to obtain surveillance photos of an attempted ATM withdrawal from Bankston's account. The investigator also linked the car used to drive to the ATM to Patten and Champion. The Clayton County district attorney's office ultimately decided not to prosecute Champion and Patten for that offense.

As noted above, the jury found Champion guilty of three counts of identify fraud, two counts of forgery in the third degree, and one count each of possession of less than one ounce of marijuana, making a false statement, speeding, driving with a suspending license, and possession of a firearm by a convicted felon. The trial court denied Champion's motion for new trial after a hearing. On Champion's first direct appeal, we remanded for completion of the record.[3] The trial court entered an order

---

[3] See *Champion v. State*, Case No. A21A1253 (March 1, 2022).

finding that the record, as supplemented, was complete, and again denied Champion's motion for new trial. This appeal followed.

1. Champion argues that there was insufficient evidence to support his convictions for identity fraud, forgery, and possession of marijuana.

> When a defendant challenges the sufficiency of the evidence to support his criminal convictions, we ask only whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. So long as there is some competent evidence, even though contradicted, to support each element of the State's case, the jury's verdict will be upheld.[4]

(a) *Identity fraud*

Under OCGA § 16-9-121 (a) (1), "[a] person commits the offense of identity fraud when he or she willfully and fraudulently [w]ithout authorization or consent, uses or *possesses with intent to fraudulently use* identifying information concerning a person[.]"[5] The indictment charged that Champion possessed with intent to

---

[4] (Citation and punctuation omitted.) *Rider v. State*, 366 Ga. App. 260, 264 (1) (883 SE2d 374) (2022).

[5] (Emphasis supplied.)

fraudulently use Sutton's financial transaction card number, USAA's corporate

financial account number, and Gallagher Bassett Services's financial account number.

Champion argues that the State failed to prove that he ever used the debit card

or checks in a fraudulent manner. However, under OCGA § 16-9-121 (a) (1), the

State was only required to prove that he "possesse[d] with intent to fraudulently use"

the identifying information. The State presented evidence at trial explaining how the

scheme involved depositing the fraudulent checks, immediately removing the money,

and then purchasing money orders in order to spend the money without a trace. The

State also presented evidence that the USAA and Gallagher checks were fraudulent

and showed how Sutton's debit card was previously used to deposit fraudulent checks

and purchase money orders, the most recent money order purchase occurring only an

hour and twenty minutes before the traffic stop. Finally, the State presented evidence

on how Champion was previously involved in a similar scheme. Considered together,

this evidence was sufficient to show that Champion intended to fraudulently use the

identifying information.[6]

---

[6] See *Smith v. State*, 322 Ga. App. 433, 436 (1) (a) (745 SE2d 683) (2013) (evidence supported identity fraud convictions where investigators discovered loose checks in a vehicle after the defendant attempted to pass a fraudulent check, the victims did not give their permission to the defendants to use their financial information on the loose checks, and the defendant had been previously convicted of

Champion also contends that the evidence was insufficient to show that he —

rather than another person in the vehicle — actually possessed the checks and debit

card, since the checks were in the passenger glove box and the debit card was in the

sunglasses holder.

> Under Georgia law, possession can be either actual or constructive. A person has actual possession of an object if he knowingly has direct physical control of it at a given time. Constructive possession results when a person who, though not in actual possession, knowingly has both the power and intention at a given time to exercise dominion or control over a thing.[7]

And while mere presence is insufficient to convict a defendant as a party to the crime,

> presence, companionship, and conduct before and after the offense are circumstances from which one's participation in the criminal intent may be inferred. A person will not be presumed to act with criminal intention, but the trier of facts may find such intention upon consideration of the words, conduct, demeanor, motive, and all other circumstances connected with the act for which the accused is prosecuted. If the totality of circumstantial evidence is sufficient to connect the defendant with the possession of the drugs, the conviction

passing fraudulent checks).

[7] (Citation and punctuation omitted.) *Bustos v. State*, 365 Ga. App. 433, 435 (1) (878 SE2d 774) (2022).

will be sustained, even though there is evidence to authorize a contrary finding.[8]

At a minimum, the jury was authorized to find that Champion had joint constructive possession of the checks and debit card. "Joint constructive possession with another will sustain a conviction for possession of contraband."[9] The debit card was used shortly before the traffic stop, and the receipts for the money orders were in the glove box. Champion also initially claimed possession of all items in the vehicle and told investigators that no one else was involved in criminal activity. The checks and debit card were also discovered near Champion's handgun.[10] Finally, Champion gave a fictitious name to the police officer in an attempt to evade arrest.[11]

---

[8] (Citation and punctuation omitted.) Id. at 436 (1).

[9] (Citation and punctuation omitted.) *Jackson v. State*, 314 Ga. App. 272, 274 (1) (a) (724 SE2d 9) (2012).

[10] See *Young v. State*, 242 Ga. App. 681, 684 (1) (530 SE2d 758) (2000) (discovery of contraband near defendant's gun provided an additional link between the contraband and the defendant).

[11] See *Moody v. State*, 232 Ga. App. 499, 502 (1) (502 SE2d 323) (1998) (attempts to evade arrest constituted evidence of the defendant's consciousness of guilt and of his intention to exercise control over the contraband).

This combined evidence, construed in favor of the verdict, authorized a finding that Champion constructively possessed the checks and debit card.[12]

(b) *Forgery*

Under OCGA § 16-9-1 (d) (2), "[a] person commits the offense of forgery in the third degree when with the intent to defraud he or she knowingly [p]ossesses ten or more checks written without a specified amount in a fictitious name or in such manner that the checks as made or altered purport to have been made by another person, at another time, with different provisions, or by authority of one who did not give such authority."

Champion argues that the evidence was insufficient to show that he possessed the USAA and InstaLoan checks or that he had an intent to defraud. As explained in Division 1 (a) above, the evidence was sufficient for the jury to find that Champion possessed the checks with an intent to defraud.

(c) *Possession of marijuana*

Champion argues that the State failed to prove that the substance found in the glass jar was marijuana. He contends that it was not tested until two days before trial

---

[12] See *Whaley v. State*, 337 Ga. App. 50, 56 (2) (785 SE2d 685) (2016).

11

and that the investigator who tested the substance was unable to prove that it was the same substance found in Champion's vehicle.

Contrary to this assertion, the investigator who tested the marijuana testified that the lead investigator gave him the evidence to test in this case, and the lead investigator received the evidence from Herrick. The test indicated that the sample was positive for marijuana.[13] Accordingly, this claim of error is without merit.

2. Champion argues that, for the same reasons the evidence was insufficient to support his convictions, the jury's verdict was contrary to the principles of justice and equity under OCGA § 5-5-20.

"[N]o court except the trial court is vested by OCGA §§ 5-5-20 and 5-5-21 with the authority to grant a new trial in a matter relating to the weight of the evidence."[14] The trial court here properly exercised its discretion as the "thirteenth juror."[15] Accordingly, this claim of error is without merit.

---

[13] See *Holmes v. State*, 301 Ga. 143, 145-146 (1) (800 SE2d 353) (2017) (holding that a field test indicating marijuana was sufficient to authorize the jury to find the defendant guilty of possession).

[14] (Citation and punctuation omitted.) *Jackson v. State*, 294 Ga. App. 555, 557 (1) (669 SE2d 514) (2008).

[15] See *Lowery v. State*, 310 Ga. 360, 362-363 (2) (851 SE2d 538) (2020).

3. Champion argues that the trial court abused its discretion in admitting the other acts evidence. He contends that there was no evidence in the 2014 case that Champion had fraudulently possessed any financial material, and the alleged victim in that case consented to Patten possessing his financial information.

"[The appellate court] review[s] the trial court's decision to admit Rule 404 (b) evidence for an abuse of discretion[.]"[16] Under Rule 404 (b), "[e]vidence of other crimes, wrongs, or acts shall not be admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, including, but not limited to . . . intent [or] knowledge[.]"[17]

> [W]e apply a three-part test to determine whether other acts evidence is admissible under Rule 404 (b): (1) the evidence must be relevant to an issue other than the defendant's character, (2) the evidence must satisfy the requirements of OCGA § 24-4-403 ("Rule 403"), and (3) the State must offer sufficient proof for the jury to find that the defendant committed the act.[18]

---

[16] *Hounkpatin v. State*, 313 Ga. 789, 794 (2) (873 SE2d 201) (2022).

[17] OCGA § 24-4-404 (b).

[18] (Citation and punctuation omitted.) *Austin v. State*, 356 Ga. App. 839, 843 (2) (849 SE2d 689) (2020).

To begin with, the other acts evidence was relevant to prove knowledge and intent. Champion argued to the jury that the State failed to prove these elements. Thus, Champion's criminal intent to defraud and knowledge were at issue.[19]

Second, the trial court did not abuse its discretion by failing to exclude the evidence under Rule 403. "It is only *unfair* prejudice, *substantially* outweighing probative value, which permits exclusion of relevant matter. Rule 403 offers an extraordinary remedy that must be used sparingly because it results in the exclusion of concededly probative evidence."[20] Given the clear questions about intent and knowledge and the similarity and closeness in time to the charged crimes, any unfair prejudice did not substantially outweigh the probative value of the other acts evidence.[21] While Champion contends that there were few similarities between the 2014 scheme and the instant offenses, both involved depositing fraudulent checks and withdrawing the money before the bank detected the checks as fraudulent.

---

[19] See *Austin*, 356 Ga. App. at 843 (2).

[20] (Citation and punctuation omitted; emphasis in original.) *Austin*, 356 Ga. App. at 844 (2).

[21] See id.; see also *Taylor v. State*, 358 Ga. App. 773, 781 (2) (a) (ii) (856 SE2d 368) (2021).

14

Finally, Champion contends that there was insufficient evidence to show that Champion committed the prior act. He argues that there was no evidence that tied him to a scheme to defraud. However, the State presented evidence from 2014 showing Champion attempting to withdraw funds on the same day fictitious checks were deposited to the account. Based on this evidence and the other evidence presented at trial, "there was sufficient proof for the jury to find by a preponderance of the evidence that [Champion] committed the prior acts."[22]

For these reasons, the trial court did not abuse its discretion in admitting the other acts evidence.

4. Champion contends that his counsel provided ineffective assistance.

Under *Strickland v. Washington*,[23] the appellant must prove both that his trial counsel's performance was deficient and that there is a reasonable probability that the trial result would have been different if not for the deficient performance. If an appellant fails to meet his or her burden of proving either prong of the *Strickland* test, the reviewing court does not have to examine the other prong. On claims of ineffective assistance of counsel, Georgia appellate courts will uphold a trial court's

---

[22] (Citation and punctuation omitted.) *Broadwater v. State*, 359 Ga. App. 87, 94 (2) (c) (854 SE2d 767) (2021).

[23] *Strickland v. Washington*, 466 U. S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984).

findings of fact unless they are clearly erroneous but review legal conclusions de novo.[24]

"[T]he failure to make a meritless objection cannot amount to ineffective assistance."[25]

(a) Champion argues that trial counsel provided deficient performance in failing to move for a directed verdict on the forgery count premised on the USAA and InstaLoan checks. Champion contends that, for the same reasons argued in Division 1 above, he lacked knowledge regarding the checks.

For the reasons stated above, there was sufficient evidence for the jury to find that he constructively possessed the checks and had the requisite fraudulent intent.[26] Accordingly, counsel did not provide deficient performance in failing to move for a meritless directed verdict.

---

[24] (Citations and punctuation omitted.) *Dority v. State*, 335 Ga. App. 83, 95-96 (4) (780 SE2d 129) (2015).

[25] *Bradley v. State*, 292 Ga. 607, 614 (5) (740 SE2d 100) (2013).

[26] See *Calhoun v. State*, 318 Ga. App. 835, 837 (2) (734 SE2d 809) (2012) ("When reviewing a denial of a motion for a directed verdict, we apply the same test as when reviewing a challenge to the sufficiency of the evidence[.]").

(b) Champion argues that counsel provided deficient performance in failing to object to Champion's sentence for identity fraud. He contends that the rule of lenity should apply because his conduct also supported a conviction for financial transaction card theft.

> [T]he rule of lenity finds its roots in the vagueness doctrine, which requires fair warning as to what conduct is proscribed. More specifically, the rule of lenity ensures that if and when an ambiguity exists in one or more statutes, such that the law exacts varying degrees of punishment for the same offense, the ambiguity will be resolved in favor of a defendant, who will then receive the lesser punishment. . . . Put another way, the operative question is whether [Champion's] conduct, as charged, subjected him to prosecution and sentencing under both statutes.[27]

As noted above, "[a] person commits the offense of identity fraud when he or she willfully and fraudulently [w]ithout authorization or consent, uses or possesses with intent to fraudulently use identifying information concerning a person[.]"[28] Under OCGA § 16-9-31 (a),

---

[27] (Citation and punctuation omitted.) *Koroma v. State*, 350 Ga. App. 530, 531 (2) (827 SE2d 903) (2019).

[28] OCGA § 16-9-121 (a) (1).

A person commits the offense of financial transaction card theft when [h]e takes, obtains, or withholds a financial transaction card from the person, possession, custody, or control of another without the cardholder's consent; or who, with knowledge that it has been so taken, obtained, or withheld, receives the financial transaction card with intent to use it or to sell it or to transfer it to a person other than the issuer or the cardholder[.]

The penalty for identity fraud is up to ten years in prison and/or up to $100,000 in fines, whereas the penalty for financial-transaction-card theft is up to three years in prison and/or up to $5,000 in fines.[29]

We have previously held in *McNair v. State* that, under the "particular facts of [the] case," the defendant was entitled to the benefit of the rule of lenity as between the identity fraud statute and financial transaction card theft statute.[30] In *McNair*, the defendant and his companions asked the victim for a ride to the mall in the victim's vehicle.[31] The victim agreed, and the defendant sat in the front passenger seat — where the victim's purse was sitting on the floorboard.[32] After arriving at the mall and

---

[29] Compare OCGA § 16-9-126 (a), with OCGA § 16-9-38 (b).

[30] *McNair v. State*, 326 Ga. App. 516, 521 (757 SE2d 141) (2014).

[31] Id. at 516.

[32] Id. at 516-517.

exiting the victim's vehicle, the defendant showed his companions that he had taken the victim's purse.[33] The group then made various purchases at the mall using the victim's credit card.[34] The State charged the defendant with identity theft. We held that, because the defendant "was not accused of taking or using the victim's credit card, but of wilfully and fraudulently possessing the credit-card number without the victim's authorization and with the fraudulent intent to use that information[,]" the "same operative facts satisf[ied] the essential elements of both" offenses, and thus the rule of lenity applied.[35]

Here, however, "[v]iewing the record as a whole,"[36] the same operative facts do not satisfy the elements of both offenses. Critically, there no was evidence presented at trial that Champion (or Patten) *took* Sutton's debit card without her permission — a critical element of financial transaction card theft. Rather, the evidence only showed that Champion *used* the card in the check fraud scheme without Sutton's permission. That is, Champion might have possessed the card with

---

[33] Id. at 517.

[34] Id.

[35] Id. at 521.

[36] *Washington v. State*, 283 Ga. App. 570, 573 (4) (642 SE2d 199) (2007).

19

Sutton's permission but then used it without her consent in the check fraud scheme. Indeed, investigators discovered another debit card in Champion's vehicle — which the State did not charge him with possessing — and that cardholder testified that she gave Champion permission to use and possess the card.

Because there was no evidence that Champion (or someone else) took Sutton's debit card without permission, the evidence would not have supported a conviction for financial transaction card theft. Accordingly, both crimes could not be "proved by the same evidence,"[37] and thus the rule of lenity does not apply in this case.[38] Trial counsel therefore did not provide deficient performance for meritlessly failing to object on this basis.

(c) Champion also contends that the rule of lenity applied to his sentence for making a false statement, because his conduct also supported a conviction for giving a false name.

A person commits then offense of making a false statement when he

---

[37] *Gordon v. State*, 337 Ga. App. 64, 68 (1) (785 SE2d 900) (2016).

[38] See *Austin*, 356 Ga. App. at 847 (3) (noting that the application of the rule of lenity in one case does not necessarily mean that another defendant convicted of the same offense will be entitled to the rule of lenity).

makes a false, fictitious, or fraudulent statement or representation; or makes or uses any false writing or document, knowing the same to contain any false, fictitious, or fraudulent statement or entry, in any matter within the jurisdiction of any department or agency of state government or of the government of any county, city, or other political subdivision of this state[.][39]

By contrast, "[a] person who gives a false name, address, or date of birth to a law enforcement officer in the lawful discharge of his official duties with the intent of misleading the officer as to his identity or birthdate is guilty of a misdemeanor."[40] Giving a false statement is punishable by up to five years' imprisonment, while giving a false name is a misdemeanor.[41]

The indictment in this case charged Champion with "providing false identifying information in writing" and "representing that [he] had been a victim of identity theft" so as to hinder Herrick's investigation. In *Dawkins v. State*, we held that the rule of lenity applied to a defendant convicted of making a false statement.[42]

_____

[39] OCGA § 16-10-20.

[40] OCGA § 16-10-25.

[41] Compare OCGA § 16-10-20, with OCGA § 16-10-25.

[42] 278 Ga. App. 343, 346 (629 SE2d 45) (2006).

In that case, the defendant had provided a false social security card and birth certificate when officers asked him for identification.[43] However, we emphasized that the indictment only charged the defendant with "with making a false statement, not with using a false writing or document[.]"[44]

Here, by contrast, Champion's indictment charged him with providing a false writing. While Champion's conduct violated both statutes, that "does not necessarily implicate the rule of lenity. For example, it is possible for the act of striking another person with an object to meet the definitions of each of the crimes of simple battery, aggravated battery, simple assault, aggravated assault, and malice murder."[45] Thus, because Champion's indictment charged him with making a false writing — an additional element not included in giving a false name — the rule of lenity does not apply. Trial counsel therefore did not provide deficient performance for failing to object on this basis.

---

[43] Id. at 344.

[44] Id. at 345.

[45] (Citations and punctuation omitted.) *Austin*, 356 Ga. App. at 845 (3).

(d) Champion argues that trial counsel provided ineffective assistance in failing to object to his sentence for theft by receiving stolen property, when the jury found him not guilty of that offense.

Champion is correct that his final disposition form contained a sentence for an offense the jury found him not guilty of. However, the court corrected this error, explaining that there was a scrivener's error in transferring the handwritten final disposition form to a typed form. Because the court already corrected this error, Champion has failed to show prejudice.

5. Champion argues that the cumulative effect of the trial court's errors prejudiced his right to a fair trial. "However, in order to establish a claim of cumulative error, a defendant must show, inter alia, that at least two errors were committed in the course of the trial."[46] Because Champion has not demonstrated multiple errors, his claim of cumulative error fails.[47]

*Judgment affirmed. Barnes, P. J., and Land, J., concur.*

---

[46] (Citation and punctuation omitted.) *Thrift v. State*, 310 Ga. 499, 515 (10) (852 SE2d 560) (2020).

[47] See id.